[No. C058883. Third Dist. Nov. 2, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT AARON KATZENBERGER, Defendant and Appellant.

## COUNSEL

Kathleen M. Gilbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Kari L. Ricci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CANTIL-SAKAUYE, J.**—Defendant Herbert Aaron Katzenberger was convicted by a jury of inflicting corporal injury on the mother of his child in violation of Penal Code section 273.5, subdivision (a).[1] He separately admitted serving a prior prison term within the meaning of section 667.5, subdivision (b). The trial court sentenced him to state prison for a total of four years, comprised of the middle term of three years for his section 273.5 conviction and one year for the prior prison term enhancement.

His sole claim on appeal relates to a PowerPoint presentation used by the prosecutor in her closing argument to illustrate the reasonable doubt standard. The PowerPoint presentation consisted of eight puzzle pieces forming a picture of the Statue of Liberty. The first six pieces came onto the screen sequentially, leaving two additional pieces missing. The prosecutor argued it was possible to know what was depicted "beyond a reasonable doubt" even without the missing pieces. The prosecutor then added the two missing pieces to show the picture was in fact the Statue of Liberty. The trial court overruled defendant's objection to the presentation. Defendant now claims reversal is required because the prosecutor's PowerPoint presentation was prosecutorial misconduct denigrating the reasonable doubt standard. We conclude the presentation was improper, but not prejudicial in this case. We shall affirm the judgment.

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

## FACTUAL BACKGROUND

Defendant and Erica Esquivel dated for two and a half years and had a daughter together.

In early June 2007, Esquivel agreed to meet defendant at his home, so that he could visit with their then 11-month-old daughter. When Esquivel arrived shortly before 10:00 p.m., defendant was not at the house, but a man named Rudy was on the front porch. Esquivel was unhappy that Rudy was there and defendant was not.

Defendant drove up and parked in the driveway as Esquivel was getting out of her car. Defendant got out of his car and walked over to Esquivel, who was standing by her car door. Defendant and Esquivel argued. Esquivel threw her hands up, either to protect her face when she thought defendant was going to hit her or as a gesture of her being upset. Defendant then punched her in her left ribs with his fist. Esquivel fell to the ground. Defendant told her to get in the house, but Esquivel got back in her car and locked the doors. She drove a short distance away and called the police.

When officers arrived at approximately 10:45 p.m., Esquivel told them defendant had punched her and lifted her shirt to show them where he had hit her. Yuba City Police Officer Thomas Mathews used a low-powered flashlight to examine Esquivel's side, but did not see anything abnormal. Yuba City Police Officer Jason Davis looked at Esquivel's skin under the available dim streetlight. He did not notice any marks either. Esquivel was in pain and had been crying, but she did not request medical treatment.

The next day Esquivel went to the hospital because of the pain in her ribs. Hospital personnel took an X-ray of her chest, but not of her left side. Esquivel was told she had no broken bones and was given pain medication.

The following day Esquivel went back to the police department to have photographs taken of the bruise that had developed where defendant hit her. Yuba City Police Officer Bill Williams took photos of the bruise, which were shown to the jury at trial. The bruise was approximately four inches in diameter and red to dark purple in color.

In late July 2007, Esquivel went to see her doctor because the bruise had gotten bigger, the area was swollen and she was still in pain. The doctor sent

her back to the hospital where an X-ray of her left side was taken. The X-ray showed two of Esquivel's ribs were broken.

Defendant presented one witness, Amber Lovell. Lovell was an acquaintance of defendant. Lovell was in defendant's car on the day in June 2007 when defendant met Esquivel at his home. From her position in defendant's SUV, Lovell heard defendant and Esquivel talking and arguing behind her. She was able to turn around and look out the back window between the headrests on the backseat and see defendant and Esquivel. She admitted she did not watch defendant for the entire time he was talking to Esquivel, but claimed she could hear everything that was said, even though the windows were rolled up. She testified she never heard any blows being struck and never saw Esquivel fall to the ground. Lovell testified Esquivel did appear to be upset and crying. Lovell also testified Rudy was sitting in a chair on the porch the entire time and saw everything. Defendant did not call Rudy to testify.

## DISCUSSION

*Background*

The prosecutor finished her closing argument to the jury with several comments regarding the reasonable doubt standard. She quoted the portion of the jury instruction on reasonable doubt that informs the jury that "[p]roof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM No. 220.) She then informed the jury that "[t]here's a little picture that's going to come up here on the screen and I'm going to talk as the picture is coming up. It's [*sic*] relates to the jury instruction that I just read you. We know what this picture is even before all the pieces come up."

At this point, the prosecutor apparently started a PowerPoint program, which has been added to the record on appeal as part of a settled statement. The PowerPoint program begins with a blue screen. When the program is started, a slide show begins in which six different puzzle pieces of a picture come onto the screen sequentially. The picture is immediately and easily recognizable as the Statue of Liberty. The slide show finishes when the sixth puzzle piece is in place, leaving two rectangular pieces missing from the picture of the Statue of Liberty—one in the center of the image that includes a portion of the statue's face and one in the upper left-hand corner of the image.

Defendant objected to the picture and asked that it be marked as a court exhibit "because it certainly does demean the reasonable doubt instruction."

The prosecutor responded that it was simply an illustrative example of reasonable doubt. "It's the same way a verbal example, a story would be used. I've chosen a picture." The trial court overruled defendant's objection, noting "the Court is not offended."

The prosecutor went on to tell the jury that "[w]e know [what] this picture is beyond a reasonable doubt without looking at all the pieces of that picture. We know that that's a picture of the Statue of Liberty, we don't need all the pieces of the [*sic*] it. And ladies and gentlemen, if we fill in the other two pieces [at this point the prosecutor apparently clicks the computer mouse again, which triggers the program to add the upper left-hand rectangle that includes the image of the torch in the statue's right hand and the central rectangle that completes the entire image of the statue], we see that it is, in fact, the [S]tatue of [L]iberty. And I will tell you in this case, your standard is to judge this case beyond a reasonable doubt." The prosecutor argued such standard was met by the evidence.

Defendant argued in his closing argument that there was "plenty of doubt in this case." He claimed "the picture of the Statue of Liberty, showing you what the prosecutor feels reasonable doubt [i]s a travesty and I object to it because that's not reasonable doubt at all." Defendant went on to describe the high standard required for beyond a reasonable doubt and argued it was not met in this case because defendant did not cause the injury to Esquivel.

After a brief rebuttal argument by the prosecution, the trial court told the jury that to "clarify things," it would read the instructions on reasonable doubt. It reminded the jury that it would have the instructions in the jury room. The trial court read the jury instructions.

After less than 45 minutes of deliberation, the jury returned with a verdict finding defendant guilty.

*Analysis*

Defendant claims on appeal, "[t]he prosecutor committed misconduct when she presented her 'illustration' of the reasonable doubt standard to the jury and equated the jury's fact-finding duty and process with the process used to identify an iconic image . . . ." Defendant claims the presentation lowered the burden of proof by impermissibly likening the reasonable doubt standard to the standard a juror would utilize in making everyday decisions. (*People v. Brannon* (1873) 47 Cal. 96, 97; *People v. Johnson* (2004) 119 Cal.App.4th 976, 980–982, 986 [14 Cal.Rptr.3d 780]; *People v. Nguyen* (1995) 40 Cal.App.4th 28, 36 [46 Cal.Rptr.2d 840].) Defendant claims the prosecutor told the jury that it could reach a guilty verdict even though information was

missing, i.e., that the prosecutor essentially and improperly suggested the jury conclude "where there's smoke there's fire."

 As the California Supreme Court recently explained, "The standards governing review of misconduct claims are settled. 'A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such " 'unfairness as to make the resulting conviction a denial of due process.' " (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 106 S.Ct. 2464]; see *People v. Cash* (2002) 28 Cal.4th 703, 733 [122 Cal.Rptr.2d 545, 50 P.3d 332].) Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial. (*People v. Frye* (1998) 18 Cal.4th 894, 969 [77 Cal.Rptr.2d 25, 959 P.2d 183].)' " (*People v. Parson* (2008) 44 Cal.4th 332, 359 [79 Cal.Rptr.3d 269, 187 P.3d 1].)

"Although counsel have 'broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law. [Citation.]' " (*People v. Mendoza* (2007) 42 Cal.4th 686, 702 [68 Cal.Rptr.3d 274, 171 P.3d 2], quoting *People v. Bell* (1989) 49 Cal.3d 502, 538 [262 Cal.Rptr. 1, 778 P.2d 129].) In particular, it is misconduct for counsel to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215 [275 Cal.Rptr. 729, 800 P.2d 1159], superseded by statute on another point as stated in *In re Steele* (2004) 32 Cal.4th 682, 691 [10 Cal.Rptr.3d 536, 85 P.3d 444].) We agree with defendant that the prosecutor's use of the PowerPoint presentation here misrepresented the "beyond a reasonable doubt" standard.

We find instructive the case of *People v. Wilds* (N.Y.App.Div. 1988) 141 A.D.2d 395, 397–398 [529 N.Y.S.2d 325, 327] (*Wilds*). In *Wilds*, the trial court used the analogy of a jigsaw puzzle of Abraham Lincoln to illustrate an instruction that the jury did not need all of their questions answered in order to convict the defendant. (529 N.Y.S.2d at p. 327.) The appellate court held this was error because "the average American juror would recognize a jigsaw puzzle of Abraham Lincoln long before all of the pieces are in place. Obviously, this is not the quantum of proof required in a criminal case." (*Ibid.*) The appellate court reversed and remanded for a new trial because the instructions diminished the prosecution's burden of proof. (*Ibid.*)

*Wilds, supra*, 529 N.Y.S.2d 325, is distinguishable as it was the trial court, not the prosecutor, who used the illustration of a jigsaw puzzle with an iconic image. Nevertheless, we find a similar problem here with the prosecutor's visual display of a puzzle coming together showing the Statue of Liberty. The

Statue of Liberty is almost immediately recognizable in the prosecution's PowerPoint presentation. Indeed, some jurors might guess the picture is of the Statue of Liberty when the first or second piece is displayed. We have viewed the PowerPoint at issue and we believe most jurors would recognize the image well before the initial six pieces are in place. The presentation, with the prosecutor's accompanying argument, leaves the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence. It invites the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt.

We also see a further problem.

In *U.S. v. Pungitore* (3d Cir. 1990) 910 F.2d 1084 (*Pungitore*), the prosecutor used his opening statement to analogize the unfolding of events to a jigsaw puzzle. In summation, one of the defendants' counsel adopted the jigsaw puzzle analogy, arguing that many pieces of the puzzle were missing and that other pieces were not genuine. In rebuttal, the prosecutor conceded that some pieces were missing, but argued that the puzzle as a whole was sufficiently completed to preclude any reasonable doubt as to the subject matter of the picture. The prosecutor then added that the prosecution's case was analogous to a 500-piece puzzle with eight pieces missing. Defense counsel objected, and the trial court gave a curative instruction as requested by counsel. The appellate court found that the prosecutor's rebuttal argument improperly suggested a quantitative measure of reasonable doubt, but found the defendants were not prejudiced, in that the prosecutor's argument was a fair reply to defense counsel's argument. (*Id.* at p. 1128.)

Improper quantification of the concept of reasonable doubt was also involved in *Lord v. State* (1991) 107 Nev. 28 [806 P.2d 548] (*Lord*). In *Lord*, the prosecutor suggested during closing argument that having 90 to 95 percent of the pieces of a puzzle suffices to convict beyond a reasonable doubt. The Supreme Court of Nevada found the comment to be an improper quantitative measure of reasonable doubt, although it was not prejudicial because the prosecutor also stated the correct definition of reasonable doubt and the jury received proper written instructions from the trial court on the standard. (806 P.2d at p. 552.)

The prosecutor's puzzle analogy here contains a quantitative component similar to those present in *Pungitore, supra*, 910 F.2d 1084, and *Lord, supra*, 806 P.2d 548.[2] Specifically, the puzzle of the Statue of Liberty is composed

---

[2] We requested and have received supplemental briefing from the parties addressing *Wilds*, *Pungitore*, and *Lord*.

of eight pieces. When the sixth puzzle piece of the slide show was in place, leaving two missing pieces, the prosecutor told the jury, "this picture is beyond a reasonable doubt," inappropriately suggesting a specific quantitative measure of reasonable doubt, i.e., 75 percent.

The prosecutor's use of an easily recognizable iconic image along with the suggestion of a quantitative measure of reasonable doubt combined to convey an impression of a lesser standard of proof than the constitutionally required standard of proof beyond a reasonable doubt. The prosecutor committed misconduct.[3]

Defendant contends such misconduct is structural error. Not so. Unlike the cases of *Sullivan v. Louisiana* (1993) 508 U.S. 275, 282 [124 L.Ed.2d 182, 113 S.Ct. 2078] and *People v. Johnson, supra,* 119 Cal.App.4th 976, 980–982, cited by defendant, we are not dealing here with instructions given by the trial court or comments made by the trial court under the cloak of its authority. Instead, we are dealing with misconduct by a prosecutor. Prosecutorial misconduct is reviewed for prejudice. (See *People v. Mendoza, supra,* 42 Cal.4th 686, 703.)

"[A]rguments of counsel 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.' [Citation.]" (*People v. Mendoza, supra,* 42 Cal.4th at p. 703.) "When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 717 [55 Cal.Rptr.2d 26, 919 P.2d 640].)

Although the trial court overruled defendant's objection to the PowerPoint presentation, allowing the presentation to go forward, the court later told the jury (after defendant vigorously contended during his argument that the presentation of the Statue of Liberty did not represent reasonable doubt at all) that it would "clarify" the issue by reading the jury instruction on reasonable

---

[3] We need not address defendant's claim that the presentation impermissibly likened the reasonable doubt standard to an everyday decisionmaking standard (*People v. Brannon, supra,* 47 Cal. at p. 97; *People v. Johnson, supra,* 119 Cal.App.4th at pp. 980–982, 986; *People v. Nguyen, supra,* 40 Cal.App.4th at p. 36) because we find the prosecutor's presentation and argument was improper regardless of whether it also lowered the standard of proof to one used in making everyday decisions.

doubt. The court proceeded to instruct the jury with the correct definition of reasonable doubt. Under these circumstances, the jury was alerted to the dispute regarding the presentation and impliedly told by the trial court to rely on the jury instruction. We presume they did so. (*People v. Chavez* (2000) 84 Cal.App.4th 25, 30–31 [100 Cal.Rptr.2d 680].)

Moreover, contrary to defendant's view, this was not a close case. Esquivel testified defendant punched her in the ribs. She immediately called the police and reported the incident, showing the responding officers her left side where she claimed to have been hit. The failure of the responding officers to see any mark on Esquivel is readily explained by their examination under dim light and the short amount of time elapsed since Esquivel claimed defendant inflicted the injury. Esquivel testified the bruise developed later, a plausible claim. She promptly sought medical attention. The failure of the X-ray taken the next day to reveal the broken ribs is readily explained by the fact the X-ray was taken of Esquivel's chest, not of her left side. The X-ray taken later of her left side revealed two broken ribs. The only witness called by defendant to dispute Esquivel's version of events admitted she was not watching the entire time. That she did not "hear" a blow from her position inside defendant's SUV, parked on the driveway with the windows rolled up, does not compel a conclusion that a blow did not occur. Defendant did not call Rudy, who was in a position to have observed the entire confrontation. There is no indication the jury had difficulty reaching a verdict. The jury did so in a short amount of time.

We conclude the prosecutor's misconduct was not prejudicial, even under a standard of beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710–711, 87 S.Ct. 824].)

Nevertheless, we caution prosecutors who are tempted to enliven closing argument with visual aids that using such aids to illustrate the "beyond a reasonable doubt" standard is dangerous and unwise. We find pertinent the following comment by our Supreme Court: "The courts, recognizing the difficulty and peril inherent in such a task, have discouraged 'experiments' by trial courts in defining the 'beyond a reasonable doubt' standard. [Citation.] By a parity of reasoning, similar perils undoubtedly . . . attend a prosecutor's attempt to reduce the concept of guilt beyond a reasonable doubt to a mere line on a graph or chart [or PowerPoint presentation]." (*People v. Medina* (1995) 11 Cal.4th 694, 745 [47 Cal.Rptr.2d 165, 906 P.2d 2]; see also *People v. Johnson, supra*, 119 Cal.App.4th at p. 986.)

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 10, 2010, S178526.