(262 P.3d 1070)
No. 103,881

STATE OF KANSAS, *Appellee,* v. KENNETH D. CRAWFORD, *Appellant.*

Opinion filed September 9, 2011.

*Daniel E. Monnat*, of Monnat & Spurrier, Chtd., of Wichita, and *Paige Nichols*, of Lawrence, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Steve Six*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and MCANANY, JJ.

MALONE, J.: Kenneth Crawford appeals his convictions and sentences for aggravated kidnapping, aggravated indecent liberties with a child, and criminal threat. Crawford claims: (1) his statutory right to a speedy trial was violated; (2) the prosecutor committed multiple acts of prosecutorial misconduct; (3) the district court committed judicial misconduct; (4) he was denied a fair trial based on cumulative error; (5) the district court improperly aggregated three misdemeanors into one prior person felony when calculating his criminal history score; and (6) the district court violated his constitutional rights when it relied on his prior convictions to increase his sentence. For the reasons set forth herein, we affirm the district court's judgment.

Crawford does not challenge the sufficiency of the evidence to support his convictions, and we will only briefly set forth the facts of the case. On August 2, 2005, at approximately 8:45 p.m., Crawford came by S.V.'s house looking for her mother, Lorrie Headley. When S.V., who was 12 years old, explained that her mother was not home, Crawford persuaded her to take a ride in his truck. Crawford drove for an undetermined amount of time and stopped in a rural area near a shack. Crawford offered S.V. a beer to drink, but she refused. Crawford then asked S.V. if he could see her breasts. S.V. said no, that was disgusting, and Crawford replied, "What do you think we came down here for?"

S.V. tried to open the door to run away, but Crawford grabbed her legs and pulled her out of the truck and onto the ground, where he straddled her. Crawford put his hand over S.V.'s right breast outside her shirt and "smeared" his face over her face. S.V. stated that she repeatedly told Crawford to stop. S.V. struggled with Crawford, ending up with a bloody lip, and Crawford told her to shut up or he would kill her. During the struggle, S.V. scratched Crawford on the left side of his face and pinched him under his arm. After approximately 5 minutes, Crawford allowed S.V. to get up off the ground. S.V. ran into some nearby trees and eventually

made it to the roadway where she encountered Nina Dozier and her husband, who were driving to their home. The Doziers drove S.V. to the local country club where Headley worked, and Headley immediately called 911.

On August 8, 2005, the State charged Crawford with aggravated kidnapping, aggravated indecent liberties with a child, criminal threat, and battery. Prior to trial, the State dismissed the battery charge. The jury trial commenced on November 16, 2009. The State presented testimony from S.V., Dozier, Headley, several Barton County Sheriff's deputies who investigated the case, and two forensic scientists from the Kansas Bureau of Investigation. Crawford did not present any testimony or evidence. The jury found Crawford guilty as charged. On January 4, 2010, the district court imposed a controlling sentence of 337 months' imprisonment. Crawford timely appealed.

## STATUTORY RIGHT TO SPEEDY TRIAL

Crawford first argues that his convictions must be reversed because the State failed to bring him to trial within the time period mandated by the speedy trial statute, K.S.A. 22-3402. Crawford concedes that he did not raise this issue in district court. The State argues that Crawford's failure to do so precludes this court from considering the issue for the first time on appeal.

Generally, issues not raised before the district court cannot be raised on appeal. *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). However, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) if the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or use of a wrong reason for its decision. *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010).

Crawford argues that the second exception applies, *i.e.*, consideration of the theory is necessary to serve the ends of justice or to

prevent a denial of fundamental rights. For support, Crawford cites *State v. Adams*, 283 Kan. 365, 153 P.3d 512 (2007). In *Adams*, the defendant raised a statutory speedy trial issue before the district court, but he failed to raise the issue on appeal. After requesting supplemental briefing and allowing the parties to address the issue at oral argument, our Supreme Court reached the merits of the speedy trial issue *sua sponte* and explained:

"Because Adams raised the statutory speedy trial issue before the district court and the resolution of this issue serves the ends of justice by reversing Adams' convictions and vacating his sentences, we believe this case presents the exceptional circumstances necessary for raising the statutory speedy trial issue *sua sponte*. In addition to impacting Adams' incarceration and criminal history, the resolution of the issue at this point serves the ends of justice by promoting judicial economy. If we had refused to address the issue, Adams would be forced to file a K.S.A. 60-1507 motion on the grounds of ineffective assistance of appellate counsel, thereby requiring the additional use of judicial resources. Addressing the issue now also serves the ends of justice by preventing the denial of Adams' statutory right to a speedy trial. While we stress it is not our role to search for errors on behalf of litigants, we note that the speedy trial error in this case was inherently obvious from a cursory reading of the record." 283 Kan. at 367-68.

Before we decide whether to consider Crawford's speedy trial issue for the first time on appeal, we will summarize the procedural history of this case in district court. Crawford's first appearance was on August 8, 2005. On the next day, Crawford's court-appointed attorney filed a motion for an evaluation to determine competency. The district court granted the motion, and Crawford was transported to the Larned State Security Hospital for an evaluation. Crawford subsequently retained Michael S. Holland as counsel. On November 15, 2005, Holland filed a motion to set aside the order for psychiatric evaluation, which the district court granted. Thereafter, the preliminary hearing was continued multiple times at Crawford's request. The preliminary hearing was finally held on August 3, 2006, and Crawford was bound over for trial on the felony counts. The arraignment was originally set for September 8, 2006, but the hearing was continued at Crawford's request.

Crawford's arraignment was finally held on January 12, 2007. At this point, Crawford was released on bond, which meant that he needed to be brought to trial within 180 days after arraignment.

See K.S.A. 22-3402(2). The district court set Crawford's jury trial for June 19, 2007, which was within the 180-day time period. However, in an order dated May 14, 2007, the district court continued the jury trial to November 13, 2007. The order, entitled "Notice of Hearing," does not contain any explanation of the reason for this continuance. Thereafter, the jury trial was continued multiple times, and there does not seem to be any dispute that these continuances were properly charged to Crawford. Crawford was not brought to trial until November 16, 2009.

The key continuance Crawford focuses on in his appeal is the continuance granted on May 14, 2007, postponing the trial from June 19, 2007, to November 13, 2007. The State concedes the order granting the trial continuance does not clearly state the reason for the continuance. However, the State asserts in its brief that "the reason was well-known to all parties, and is most certainly why no speedy trial claim was raised below. The fact is, on June 7, 2007, only twelve days before the scheduled trial, Defendant's counsel, Michael S. Holland, died." Pursuant to an order from this court, the State added Holland's death certificate to the record on appeal. The State further argues there is evidence in the record of Holland's ill health preceding his death and this circumstance led to the delay in Crawford's trial. To support this contention, the State points to excerpts from a hearing held on May 29, 2008, at which Crawford's subsequent attorney, Michael S. Holland, II, was seeking to withdraw as counsel. At this hearing, Holland, II stated:

"I think if you go back through most of the file, you will see a lot of those continuances were toward the end of my father's life and had to be continued due to health reasons. So all of that would be time billable against the defendant. Obviously, then after the trial time, since we had a tentative plea or plea on the table, certainly that would be time billable against the defendant, and I would assume Mr. Crawford would say on the record today that he understands that any time it takes to get this matter now rescheduled, since he's asked me to withdraw, would not count against speedy trial for the State."

As the State points out, presumably Holland II did not believe the speedy trial deadline had expired as of May 29, 2008, or else he would not have informed the district court that Crawford was still willing to waive his speedy trial right to obtain further contin-

uances. If the May 14, 2007, trial continuance was in fact granted at defense counsel's request due to his poor health, the time was attributed to Crawford. See *State v. Vaughn*, 288 Kan. 140, Syl. ¶ 3, 200 P.3d 446 (2009) ("Actions of defense counsel are attributable to the defendant in computing speedy trial violations unless the defendant timely voices his or her disagreement with those actions.").

The State argues there is evidence in the record indicating that the May 14, 2007, continuance was granted due to the illness of Crawford's counsel, and the only reason the record does not clearly reflect the reason for the continuance was because Crawford never raised the speedy trial issue in district court. The State maintains that if Crawford had raised the issue in district court, the State would have made a clear record of the reason for the continuance. Under the circumstances, the State strenuously objects to this court addressing the merits of the speedy trial issue for the first time on appeal. The State suggests, at the very least, that the case should be remanded for a hearing to allow the parties to make a better record of the reason for the May 14, 2007, continuance.

Crawford responds by arguing that the speedy trial issue must be resolved based upon the current record and that no further evidence or explanations may be relied on to "correct" the record as to the reason for the continuance. To support this argument, Crawford relies primarily on *State v. George*, 9 Kan. App. 2d 479, 681 P.2d 30 (1984). In *George*, the defendant was charged with driving under the influence of alcohol, and his first trial ended in a mistrial. The district court scheduled the second trial to commence on May 23, 1983, within 180 days of the mistrial. On that date, the parties and counsel were present, but jurors had not been summoned. The district court postponed the trial until June 13, 1983, the 182nd day after the mistrial. On that day, the defendant filed a motion to dismiss based on the speedy trial violation. The district court denied the motion, citing for the first time unavailable material evidence and the court's caseload as reasons for the earlier continuance. K.S.A. 22-3402(3)(c) and (d) (Ensley 1981). A jury convicted the defendant. 9 Kan. App. 2d at 479-80.

On appeal, this court reversed the defendant's conviction and held:

"[T]he order of continuance, stating a proper statutory reason, must be made within the 180-day period. It is not permissible for the trial court to grant a continuance which extends the trial date to a point beyond 180 days based on a ground not authorized by statute. To do so is reversible error which cannot be corrected by stating a statutory ground after the expiration of the 180-day period within which, absent authorized delays, defendant must be tried." 9 Kan. App. 2d at 481.

In *George*, the district court initially granted the trial continuance because of the absence of jurors, which is not a reason authorized in K.S.A. 22-3402. After the 180-day deadline expired, the district court attempted to rely upon some statutory grounds for granting the earlier continuance. *George* stands for the proposition that a district court cannot assert a statutory basis for a continuance after the speedy trial deadline has expired that was not relied upon by the district court prior to the expiration of the speedy trial deadline. We perceive a distinction between this rule and the circumstances of Crawford's case. The State is not attempting to have the district court assert a statutory basis for the trial continuance granted on May 14, 2007, that was not relied upon by the district court prior to the expiration of the speedy trial deadline.

Here, the only real issue is whether Crawford requested or acquiesced in the May 14, 2007, trial continuance. There is some evidence in the record that the continuance was granted due to the illness of Crawford's counsel. Had Crawford raised the speedy trial issue in district court, we know of no legal authority that would have precluded the district court from allowing the parties to present evidence to establish whether Crawford requested or acquiesced in the May 14, 2007, continuance. To the contrary, an appellate court would expect the district court to make findings of fact and conclusions of law so the issue could be adequately reviewed on appeal. See *Vaughn*, 288 Kan. at 150-51 (Supreme Court remanded case to district court to make findings on whether defendant acquiesced in a continuance).

Crawford's request for this court to consider his speedy trial issue for the first time on appeal is the opposite of what occurred

in *Adams*. In *Adams*, the defendant raised a speedy trial issue before the district court but failed to do so on appeal. On appeal, the Supreme Court raised the issue *sua sponte* because the speedy trial error "was inherently obvious from a cursory reading of the record." 283 Kan. at 368. Here, Crawford never raised the speedy trial issue in district court. For this obvious reason, the record on appeal is not properly developed as to the reason for the crucial trial continuance. Crawford wants to turn the insufficient record to his advantage and he now requests, for the first time on appeal, that his convictions must be reversed due to an alleged speedy trial violation. This request does not comport with our notion that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. Therefore, we decline Crawford's request to consider his statutory speedy trial issue for the first time on appeal.

Before proceeding to the next issue, we note that Crawford is not left without a remedy to assert his alleged speedy trial violation. Because we are not addressing the merits of the claim in his direct appeal, Crawford is free to raise this issue in the context of an ineffective assistance of trial counsel claim asserted in a timely motion under K.S.A. 60-1507. If Crawford chooses to pursue this relief, he would almost certainly be entitled to receive an evidentiary hearing in district court. Such a hearing would provide the parties with a better opportunity to address the issue and allow the district court to make appropriate findings on Crawford's claim.

## PROSECUTORIAL MISCONDUCT

Next, Crawford claims he was denied a fair trial based on prosecutorial misconduct. Specifically, Crawford argues that the prosecutor committed reversible misconduct (1) by intimidating the jury during voir dire by referring to posttrial questioning of jurors, (2) by misrepresenting the definition of reasonable doubt and minimizing the standard of proof during voir dire and closing argument, and (3) by arguing matters outside the evidence during closing argument.

A claim of prosecutorial misconduct based on comments made during voir dire, opening statements, or closing argument which

are not evidence will be reviewed on appeal even when a contemporaneous objection was not made at trial. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). Here, the comments challenged on appeal were made during voir dire and closing argument and are not evidentiary. Therefore, the lack of contemporaneous objections to some of the statements is not fatal to the challenge.

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis. First, the appellate court decides whether the comments were within the wide latitude that the prosecutor is allowed in discussing the evidence. Second, if misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 (2009). "Obviously, if the comments do not exceed the bounds of fair argument, there is no need to proceed to the second step of assessing plain error." *State v. Hunt*, 285 Kan. 855, 866, 176 P.3d 183 (2008).

*Reference to Posttrial Questioning of Jurors*

First, Crawford argues that the prosecutor implied during voir dire that jurors would have to justify and defend their verdict posttrial if they did not convict Crawford. Specifically, Crawford challenges the following comments:

"And in this case, I represent the State of Kansas, and I want to talk to you about—I'm going to ask you a number of questions, and as the judge indicated, I'm not trying to embarrass you. This is the last chance we'll have to talk until after the case, and if you're seated as a juror in this case, I can guarantee I'm probably going to want to talk to you when we're done regardless of the outcome, because I like to find out what did you like, what things did you dislike, what are things we can improve on, things like that. So we'll talk after the case is done."

Crawford argues that these comments constituted misconduct because the prosecutor did not explain that the jurors would not be required to talk to him after the trial. According to Crawford, the prosecutor guaranteed a "post-verdict inquisition," which intimidated jurors into convicting the defendant so they would not have to defend an acquittal to the prosecutor. On the other hand,

the State characterizes the prosecutor's comments as merely informing the jurors that, regardless of the outcome of the trial, he would want to talk with them afterward to get their impressions and learn how he could improve his trial performance.

We side with the State on this point. We do not agree that the prosecutor's comments can be fairly characterized as a "demand" that the jurors defend an acquittal to the prosecutor posttrial. The prosecutor told the jurors he wanted to speak with them after the trial "regardless of the outcome." Considered in context, the comments appear benign and nonthreatening. It is clear that the prosecutor wanted to speak with the jury posttrial to learn how to improve his trial skills. Our Supreme Court has stated: "[A]ttorneys may discuss a trial with willing jurors after their discharge from jury duty." *Williams v. Lawton*, 288 Kan. 768, Syl. ¶ 9, 207 P.3d 1027 (2009). We conclude the prosecutor did not commit misconduct by making these comments.

## The Jigsaw Puzzle Analogy

Next, Crawford contends that the prosecutor committed misconduct by misrepresenting the definition of reasonable doubt and minimizing the State's burden of proof through an analogy to a jigsaw puzzle. During voir dire, the prosecutor stated:

"[Prosecutor]: Okay. You have seen jigsaw puzzles. Have you seen jigsaw puzzles where maybe one or two pieces, a couple pieces are missing throughout the puzzle?

"[Potential Juror]: I don't know. I suppose.

"[Prosecutor]: Okay. Go with me here then, just go with me for a second. We have got a big puzzle like this, the scene is a lighthouse and the ocean and the waves crashing against the rocks, a [sic] there's couple gulls flying around. Got that?

"[Potential Juror]: Got it.

"[Prosecutor]: Okay. If you're missing some of the pieces to the lighthouse and some of the pieces to the ocean, do you then say, well, that just can't be a lighthouse and an ocean because there's some pieces missing?

"[Potential juror]: No.

"[Prosecutor]: Are you so even though there's some pieces missing, you're able to say that looks like a lighthouse and an ocean?

"[Potential juror]: Yeah, I'm sure.

"[Prosecutor]: That's kind of what I'm talking about is reasonable doubt. There's probably always going to be some question something that doesn't get answered.

The question is, when you put the pieces together, even if there are some pieces missing, does that mean it didn't happen? No. So—and that's kind of why I bring that up. Thanks."

Additionally, during closing argument, the prosecutor revisited the jigsaw puzzle analogy:

"You get to determine credibility of witnesses, and when I talked in voir dire about the jigsaw puzzle, and the scene with the lighthouse and the ocean, there are always going to be pieces of the puzzle missing because none of us were there. None of you were there. The question you got to ask yourself is just because a piece of the puzzle—pieces of the puzzle are missing, does that mean you can't see the whole picture? Are those questions reasonable in your mind?"

Crawford argues that the jigsaw puzzle analogy suggested that the jury could convict him even if some elements of the crimes were missing from the evidence. Also, Crawford contends that the analogy minimized the State's burden of proof and invited the jury to jump to conclusions rather than to assess whether the State had proven guilt beyond a reasonable doubt. The State argues that the jigsaw puzzle analogy helped explain to the jury the concepts of reasonable doubt and weighing the credibility of witnesses. The State also argues that even if the analogy constituted misconduct, it does not warrant reversal of Crawford's convictions.

Kansas appellate courts have not addressed the propriety of analogizing reasonable doubt to a "jigsaw puzzle"; therefore, both parties turn to cases outside this jurisdiction for guidance. Crawford cites first to *People v. Katzenberger*, 178 Cal. App. 4th 1260, 101 Cal. Rptr. 3d 122 (2009). In *Katzenberger*, the prosecutor, as part of her closing argument, played for the jury a PowerPoint program on which puzzle pieces sequentially appeared on the screen, "immediately and easily recognizable as the Statue of Liberty." 178 Cal. App. 4th at 1264. After six of the eight pieces comprising the puzzle appeared in place, the slide show finished. Over the defendant's objection, the district court allowed the prosecutor to continue, and she stated:

" '[W]e know [what] this picture is beyond a reasonable doubt without looking at all the pieces of that picture. We know that that's a picture of the Statue of Liberty, we don't need all the pieces of the [*sic*] it. And ladies and gentlemen, if we fill in the other two pieces' [at this point the prosecutor apparently clicks the computer

mouse again, which triggers the program to add the upper left-hand rectangle that includes the image of the torch in the statue's right hand and the central rectangle that completes the entire image of the statue], 'we see that it is, in fact, the [S]tatue of [L]iberty. And I will tell you in this case, your standard is to judge this case beyond a reasonable doubt.' The prosecutor argued such standard was met by the evidence." 178 Cal. App. 4th at 1265.

The California Court of Appeals determined that the challenged statement misrepresented the "beyond a reasonable doubt" standard of proof, finding that it left "the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence" and that it "invite[d] the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt." 178 Cal. App. 4th at 1266-67. Further, due to the fact that the PowerPoint presentation supposedly showed the standard had been met after six of eight pieces of the puzzle were completed, the court found there was an impermissible suggestion of a specific quantitative measure of reasonable doubt. 178 Cal. App. 4th at 1268. But although the presentation was in error, the court determined the misconduct was not prejudicial because the jury was properly instructed on reasonable doubt and the evidence against the defendant was strong. 178 Cal. App. 4th at 1268-69.

Crawford also cites *People v. Wilds*, 141 App. Div. 2d 395, 529 N.Y.S.2d 325 (1998). In *Wilds*, in order to explain to the jurors that they did not need to have every question answered in order to convict the defendant, the district court used the illustration of a jigsaw puzzle of Abraham Lincoln:

" 'So the point of all of this is that some of your questions may never be answered. So what. It's not a jigsaw puzzle, it's not a game you are going to get all the pieces which the Prosecution feels it has to give you in order to make out a case beyond a reasonable doubt. If it makes out its case beyond a reasonable doubt even though some questions are unanswered, even though there [are] some blank spaces in the jigsaw puzzle you will say so you are convinced beyond a reasonable doubt that this is a portrate [*sic*] of Abraham Lincoln. Prove it. Guilty. And if you can't tell what the picture is, too many blank spaces then you say not proven. Not guilty.' " 141 App. Div. 2d at 398.

The New York Supreme Court found that this was error because it "diminished the People's burden of proof and permitted the

conviction of the defendant, based upon a standard less than that of beyond a reasonable doubt." 141 App. Div. 2d at 398. Because of this error and the fact that the district court impermissibly allowed the jurors to comment and ask questions during the complaining witness' direct examination, the court reversed the convictions and remanded for a new trial. 141 App. Div. 2d at 397-98.

While not conceding misconduct in the instant case, the State agrees that many courts have found that such an analogy is misconduct, even where it does not require reversal. See, *e.g.*, *Lord v. State*, 107 Nev. 28, 35, 806 P.2d 548 (1992) (finding it improper for the prosecutor to suggest having 90-95% of the pieces of a puzzle was enough to convict beyond a reasonable doubt); *State v. Johnson*, 158 Wash. App. 677, 685, 243 P.3d 946 (2010) ("[D]iscussing the reasonable doubt standard in the context of making an affirmative decision based on a partially completed puzzle trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so.").

Our Supreme Court, while not addressing the jigsaw puzzle analogy specifically, has stated that "[c]omments by a prosecutor which suggest to the jury that it may convict a defendant on anything less than proof beyond a reasonable doubt constitutes prosecutorial misconduct." *State v. Brinklow*, 288 Kan. 39, Syl. ¶ 5, 200 P.3d 1225 (2009). Here, the prosecutor stated that "even though there's some pieces missing, you're able to say that looks like a lighthouse and an ocean," which implied to the jury that it could find Crawford guilty even if some evidence was missing if it "looked like" he committed the crimes. Therefore, we conclude the comments were beyond the wide latitude afforded prosecutors and constituted misconduct.

In the second step of the analysis of prosecutorial misconduct, the appellate court considers three factors to determine whether to grant a new trial:

"(1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little

weight in the minds of jurors. None of these three factors is individually control-ling." *McReynolds*, 288 Kan. at 323.

Crawford argues that the jigsaw puzzle analogy was gross and flagrant misconduct because it showed indifference to our Supreme Court's longstanding warnings to prosecutors against trying to define reasonable doubt. But although our Supreme Court has consistently held that it is prosecutorial misconduct when the State incorrectly defines its burden of proof, the court has also consistently found that the improper definitions did not constitute gross and flagrant misconduct. See, *e.g.*, *State v. Magallanez*, 290 Kan. 906, 912, 914-15, 917-18, 235 P.3d 460 (2010) (finding misconduct, but not gross and flagrant, where prosecutor told the jury " 'when you believe he's guilty you've passed beyond' " a reasonable doubt); *State v. Sappington*, 285 Kan. 176, 185-86, 169 P.3d 1007 (2007) (finding misconduct, but not gross and flagrant, where prosecutor suggested to jury it may convict if it believed it was reasonable that the defendant committed the crime). Thus, the fact that our Supreme Court has cautioned against attempting to define reasonable doubt does not automatically turn such an attempt into gross and flagrant misconduct. Here, we conclude the prosecutor's comments about the jigsaw puzzle, while improper, were not gross and flagrant.

Crawford advances the same argument to show that the comments demonstrated ill will on the part of the prosecutor. But as the State points out, there are no indications in the record that the jigsaw puzzle analogy was motivated by ill will. The prosecutor did not persist in referring to the puzzle over sustained objections or admonitions by the district court. Cases in which ill will on the part of the prosecutor has been found involve much more egregious behavior. See, *e.g.*, *State v. McCaslin*, 291 Kan. 697, 721-22, 245 P.3d 1030 (2011) (finding ill will where there was no legitimate reason for the question by the prosecutor); *State v. Elnicki*, 279 Kan. 47, 66, 105 P.3d 1222 (2005) (finding ill will where prosecutor ignored district court's warnings not to comment on witness credibility); *State v. Herrera*, 41 Kan. App. 2d 215, 228, 202 P.3d 68 (2009) (finding ill will where prosecutor repeatedly committed mis-

conduct). We conclude the comments challenged here did not show ill will on the part of the prosecutor.

Finally, Crawford argues that we cannot conclude that the evidence against him was of such a direct and overwhelming nature that the misconduct likely had little weight in the minds of the jurors. The State responds that the evidence supporting Crawford's convictions was strong and the jury was properly instructed on the burden of proof and reasonable doubt. We will not recite all the evidence presented at Crawford's trial. However, we note that Crawford is not challenging the sufficiency of the evidence to support his convictions. We further note that the district court correctly instructed the jury on the burden of proof:

"The State has the burden to prove Kenneth Crawford guilty. Mr. Crawford is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty. The test you must use in determining whether Mr. Crawford is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Kenneth Crawford not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find Mr. Crawford guilty."

Given the clear and direct instructions by the district court on the State's burden of proof, it is apparent that the prosecutor's comments about the jigsaw puzzle did not lead the jury into ignoring the proper standard of proof, and the misconduct likely had little weight in the minds of the jurors. Therefore, we conclude the misconduct did not deny Crawford a fair trial. But we hasten to add that argument designed to define reasonable doubt for jurors with unusual or seemingly clever analogies heads down a path fraught with peril. References to jigsaw puzzles and missing pieces venture into particularly dangerous territory, as the case authority from other jurisdictions suggests. Such arguments often impermissibly suggest a mathematical formula for reasonable doubt or otherwise tend to dilute the standard or confuse jurors in ways that could result in reversible error in many circumstances. Counsel in criminal cases would do well to avoid comments mixing reasonable doubt and jigsaw puzzles in speaking with the jury.

*Arguing Outside the Evidence*

In his last allegation of prosecutorial misconduct, Crawford asserts that the prosecutor argued facts during closing argument that were not in evidence. Specifically, Crawford claims the prosecutor's comments about a sheriff's deputy finding oil spots at the crime scene left by Crawford's truck were not supported by the evidence.

During closing argument, the prosecutor stated, "[Detective] Paden said you could see the tire marks, and when we got up closer, there was an oil spot where a truck had parked, oil spot right in the middle." Further, the prosecutor stated, "And the other thing that Paden noticed, there was that oil drip out in the field. Guess what? Defendant's truck just happens to drip oil right between the two tires, fresh oil."

Crawford claims that these comments argued facts outside the evidence because Paden testified Crawford's truck was leaking oil and that he found a "dark spot" in the grass where S.V. alleged she was assaulted. Crawford argues that because Paden did not collect or test any sample of the "dark spot" in order to attempt to match it to Crawford's truck, it was prosecutorial misconduct to attempt to argue that this evidence showed Crawford's truck was at the alleged crime scene. The State replies that the prosecutor's comments accurately reflected Paden's testimony at trial and were not misconduct.

The State is correct. On cross-examination, Paden testified that he saw tire marks in the field and, according to S.V.'s recollection of where the truck was parked, saw a dark spot there that looked like oil. Further, defense counsel at least twice referred to the spot as "an oil spot" during cross-examination. On redirect examination, Paden testified that he saw Crawford's truck leaked oil. "[A] prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable inferences from that evidence. [Citations omitted.]" *McCaslin*, 291 Kan. at 722. The prosecutor's comments were clearly within the latitude allowed and did not constitute misconduct.

## JUDICIAL MISCONDUCT

Next, Crawford argues that the district judge committed judicial

misconduct and prejudiced his right to a fair trial. Crawford challenges the following statement made by the district judge immediately before the judge read the instructions to the jury.

"We're going to get jury instructions before we get closing arguments, and there's a silly rule that I get to read them to you even though you have them in front of you, although you have sworn you understand the English language well enough to read and answer the questions."

Crawford did not contemporaneously object to the district judge's comments, yet he now claims that the misconduct denied him a fair trial. Our Supreme Court has reviewed allegations of judicial misconduct despite the absence of a contemporaneous objection. See *State v. Tyler*, 286 Kan. 1087, 1090-94, 191 P.3d 306 (2008) (analyzing claim of judicial misconduct on appeal that was not raised or objected to below where the defendant claimed his right to a fair trial was violated by the alleged misconduct).

"We exercise unlimited review of the particular facts and circumstances of each case to determine whether judicial comments, other than jury instructions, rise to the level of judicial misconduct. The complaining party has the burden to establish that misconduct occurred and that the misconduct prejudiced the party's substantial rights. " 'If a proper and reasonable construction will render the remark unobjectionable, the remark is not prejudicial.' " [Citations omitted.]" *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010).

Crawford claims the district judge's comments trivialized the jury instructions and "implicitly invited the jurors to sleep through the oral reading." The State maintains the district judge's comments were merely "an acknowledgment of the jurors' intelligence," did not demean the jury instructions, and did not prejudice Crawford in any way.

Crawford cites to several cases to attempt to support his claim that the district judge committed misconduct, but we find none of the cases to be on point. Here, the district judge's comment, while ill-advised, was not commentary on the jury instructions substantively, nor did the district judge fail to read the jury instructions aloud. Crawford has failed to establish how he was prejudiced by the district judge's comment. We conclude the district judge did not commit judicial misconduct.

## Cumulative Error

Next, Crawford maintains that the cumulative effect of prosecutorial and judicial misconduct denied him a fair trial. The State argues that because there was no prosecutorial misconduct and no judicial misconduct, there can be no cumulative error.

"Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative error doctrine if the evidence is overwhelming. [Citation omitted.]" *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009).

Here, all of Crawford's charges of prosecutorial and judicial misconduct failed except one; the prosecutor committed misconduct by analogizing reasonable doubt to a jigsaw puzzle. "One error is insufficient to support reversal under the cumulative effect rule. [Citation omitted.]" *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009). Under the rule set forth in *Cofield*, Crawford's claim of cumulative error fails.

## Scoring Uncounseled Misdemeanor in Criminal History

Crawford raises two sentencing errors. First, Crawford argues that the district court improperly counted a prior person felony that was based on aggregated unproven and uncounseled misdemeanors when calculating his criminal history. Interpretation of a sentencing statute is a question of law, and the standard of review is unlimited. *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009).

Crawford's criminal history contained no person felonies. The presentence investigation report aggregated three prior misdemeanor battery convictions into one person felony, which elevated Crawford's criminal history score from an F to a C. Crawford filed an objection to his criminal history, arguing that two of the three misdemeanor battery convictions should not be eligible for conversion to a person felony because he was not represented by counsel in either case, nor did he waive his right to counsel. At the sentencing hearing, Crawford conceded that the State met its burden of proof that he waived his right to counsel with respect to

one of the two convictions. Ultimately, the district court found that the final challenged conviction should be scored in the criminal history because Crawford had not been sentenced to imprisonment.

Crawford first contends that the State failed to meet its burden to prove by a preponderance of the evidence that he was previously convicted of the two disputed battery charges. The State replies that Crawford is precluded from raising this issue on appeal because he did not challenge the sufficiency of the evidence proving his prior convictions at the district court. The State is correct. Crawford's written objection to the criminal history calculation does not refer to the State's responsibility to prove the existence of the convictions, only to the State's burden to show he was either advised by counsel or had properly waived the right to counsel. Generally, issues not raised before the district court cannot be raised on appeal. *Warledo*, 286 Kan. at 938.

Crawford additionally argues, as he did to the district court, that the uncounseled battery conviction, absent a waiver of the right to counsel, may not be used as part of the person felony calculation. While not conceding the conviction was uncounseled, the State replies that the Sixth Amendment right to counsel was not implicated in the misdemeanor conviction at issue because Crawford was not sentenced to a term of imprisonment; therefore, it can be used in subsequent criminal history calculation even if Crawford was not represented by counsel during the proceedings.

"A person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence to be imposed upon conviction includes a term of imprisonment, even if the jail time is suspended or conditioned upon a term of probation. The right to counsel arises at the stage of the proceedings where guilt is adjudicated, eligibility for imprisonment is established, and the prison sentence determined." *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 2, 206 P.3d 518 (2009).

Here, Crawford's challenged battery conviction resulted in $20 court costs and a suspended fine; he was not sentenced to a term of imprisonment, whether imposed, suspended, or conditioned on probation. Pursuant to *Youngblood*, Crawford's misdemeanor battery conviction did not implicate the right to counsel.

Crawford concedes that this court has previously stated that where a defendant is not sentenced to a term of imprisonment, there is no Sixth Amendment right to counsel in misdemeanor cases. *State v. Long*, 43 Kan. App. 2d 328, 337-38, 225 P.3d 754 (2010). But Crawford argues that the municipal ordinance under which he was convicted carried a potential term of imprisonment and the mere possibility he could have been sentenced to a term of imprisonment triggered his Sixth Amendment right to counsel. If Crawford's argument is correct, then uncounseled misdemeanors can *never* be scored in criminal history because there is always a potential of imprisonment. This is contrary to *Youngblood*, which held that the defendant "was entitled to counsel when the municipal court found him guilty and sentenced him to a prison term, even though the jail term was conditioned upon probation." 288 Kan. at 670. Here, because Crawford received only a suspended fine and was required to pay court costs, his misdemeanor battery conviction in 1996 did not trigger his constitutional right to counsel, nor was it improperly included in his criminal history calculation.

## APPRENDI ISSUE

Finally, Crawford argues that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it considered his criminal history in calculating his sentence without requiring the criminal history to be proven beyond a reasonable doubt to a jury. Crawford concedes that the Kansas Supreme Court has already decided this issue against him in *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. *State v. Jones*, 44 Kan. App. 2d 139, 142, 234 P.3d 31 (2010). There is no indication that the Kansas Supreme Court is departing from its position in *Ivory*.

Affirmed.