Filed 3/5/14  P. v. McCunney CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRUCE ALAN McCUNNEY II,<br><br>    Defendant and Appellant. | 2d Crim. No. B246996<br>(Super. Ct. No. 1356020)<br>(Santa Barbara County) |

Bruce Alan McCunney II appeals an order of probation following conviction of driving under the influence of alcohol, and driving with an 0.08 percent blood alcohol level, with findings that he violated Vehicle Code provisions while driving, and that more than one victim sustained bodily injury.  (Veh. Code, §§ 23153, subds. (a) & (b), 22107, 22349, 27315, subd. (d)(1), 23558.)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

Shortly after midnight on April 20, 2011, California Highway Patrol Officer Scott Williams responded to the report of a traffic accident on the highway south of Buellton.  Williams found McCunney and Travis Hawley standing on the shoulder of the southbound highway lane.  McCunney informed Williams that he had been driving his vehicle at approximately 65 to 70 miles per hour when he lost control ("cut off by a

---

[1] All further statutory references are to the Vehicle Code.

white SUV") and drove down an embankment into a ravine. McCunney stated that his passengers were still inside the vehicle.

Williams noticed that McCunney's eyes were red, his speech was slurred, and he had an alcohol odor. Believing that McCunney was under the influence of alcohol, Williams administered field sobriety tests. McCunney performed poorly on the tests and had difficulty following the test instructions. Williams then arrested McCunney for being under the influence of alcohol. McCunney later admitted that he had consumed two containers of beer earlier that evening.

The five passengers in McCunney's vehicle sustained individual injuries, including a fractured pelvis, a broken tooth, lacerations, and poison oak rash (the ravine contained poison oak). McCunney suffered a bloody nose and a lacerated lip.

At trial, several of McCunney's passengers testified that he was driving between 75 and 85 miles per hour and swerving or "goof[ing] off" before "fishtail[ing]" off the road.

A blood alcohol test revealed that McCunney had a blood alcohol level of 0.15 several hours following the accident. An alcohol breath test administered later revealed a 0.11 blood-alcohol concentration.

Nicholas Coronado, a criminalist whose expertise includes forensic alcohol analysis, opined that a person whose blood alcohol level is 0.15 within an hour and one-half of an accident, and 0.11 within two and one-half hours of an accident, is sufficiently impaired to preclude safe operation of a motor vehicle.

The jury convicted McCunney of driving under the influence of alcohol (count 1), and driving with an 0.08 percent blood alcohol level (count 2). (§ 23153, subds. (a) & (b).) It also found that he violated three Vehicle Code provisions while driving, and that more than one victim sustained bodily injury. (§§ 22107 [unsafe lane change without signaling], 22349 [exceeding maximum speed limit], 27315, subd. (d)(1) [passengers not wearing seatbelts], 23558 [bodily injury enhancement].) The trial court suspended imposition of sentence and granted McCunney five years of formal probation with terms and conditions, including service of 180 days confinement in county jail. The

2

court imposed various fines and fees, ordered victim restitution, and awarded McCunney three days of presentence custody credit.

McCunney appeals and contends that the trial court erred by sustaining prosecution objections to the defense summation regarding: 1) the reasonable doubt standard; 2) reasonable inferences to be drawn from Coronado's testimony that "most people" with an 0.08 blood alcohol level are impaired drivers; and 3) "head trauma." McCunney asserts that the errors are cumulatively prejudicial.

## DISCUSSION

### I.

McCunney argues that the trial court erred by sustaining the prosecutor's objection to the defense comparison of the reasonable doubt standard to the standard used in other important life decisions: "Think about the kinds of things where you might -- might be making something that you view as an abiding conviction: The choice of a spouse, the choice of a husband; maybe where your son or daughter is going to school; maybe when you buy that first house and you invest your life savings." McCunney contends that the court clouded the meaning of reasonable doubt by sustaining the objection, thereby creating reversible error. He asserts that evidence and reasonable inferences therefrom suggest that he was injured that evening, another vehicle swerved in front of his vehicle causing the accident, and the blood alcohol level results are unreliable.

The trial court did not err by sustaining the prosecutor's objection to the defense characterization of reasonable doubt.

It is well settled that the reasonable doubt standard is not a standard a person might employ in making everyday decisions. (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1265.) "The judgment of a reasonable man in the ordinary affairs of life, however important, is influenced and controlled by the preponderance of evidence. Juries are permitted and instructed to apply the same rule to the determination of civil actions involving rights of property only. But in the decision of a criminal case involving life or liberty, something further is required. . . . There must be in the minds of the jury

3

an abiding conviction, to a moral certainty, of the truth of the charge, derived from a comparison and consideration of the evidence." (*People v. Brannon* (1873) 47 Cal. 96, 97.) To liken the reasonable doubt standard to that same standard a person uses in making important life decisions "trivializes" the standard and constitutes improper argument. (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 36.)

In any event, the trial court properly instructed regarding the reasonable doubt standard and also informed the jury that it must follow the court's instructions and not the attorneys' comments regarding the law. (CALCRIM Nos. 200 ["Duties of Judge and Jury"], 220 ["Reasonable Doubt"].) We presume that jurors generally understand and follow the court's instructions. (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)

*II.*

McCunney contends that the trial court precluded him from contesting guilt and impermissibly shifted the burden of proof by sustaining the prosecutor's objection to this summation argument: "'When a person reaches an .08 blood alcohol level, does impairment manifest itself at that point?' Well, the answer [according to expert witness Coronado] . . . is that in most people it does, but there's two reasonable conclusions from the answer. Most people would be impaired, but some people reasonably are not impaired." McCunney argues that the error is not harmless beyond a reasonable doubt, pointing to evidence that another vehicle may have caused the accident.

The trial court did not err by sustaining the prosecutor's objection. Coronado's testimony that "most people" with 0.08 blood alcohol levels are impaired drivers does not permit a reasonable inference that a specific person (McCunney) with an 0.08 blood alcohol level is not an impaired driver. Moreover, evidence at trial established that McCunney's blood alcohol level was either 0.11 or 0.15, depending upon the nature of the test.

In any event, the trial court properly instructed regarding the elements of the charged criminal offenses and the definition of "under the influence." (CALCRIM Nos. 2100, 2101.) The court also specifically instructed: "If the People have proved beyond a reasonable doubt that the defendant's blood alcohol level was 0.08 percent or

4

more at the time of the chemical analysis, you may, but are not required to, conclude that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense." We presume that the jury generally understands and follows the instructions. (*People v. Myles*, *supra*, 53 Cal.4th 1181, 1212.)

## III.

McCunney argues that the trial court erred by sustaining the prosecutor's objection to defense counsel's argument that head trauma explained his apparent intoxication: "[W]here did the bloody nose come from? Probably contact with the steering wheel. Head trauma. . . . [T]here is another reasonable alternative to explain [a failed field sobriety test]: Head trauma."

At closing argument, a party may discuss the evidence and comment on reasonable inferences that may be drawn therefrom. (*People v. King* (2010) 183 Cal.App.4th 1281, 1306.) Nevertheless, counsel may not assume or state facts not in evidence or mischaracterize the evidence. (*Id.* at pp. 1306-1307.)

The trial court did not err by sustaining the prosecutor's objection because there is no evidence that McCunney suffered from head trauma nor was there evidence that head trauma can mimic symptoms of intoxication. McCunney did not offer expert witness testimony whether head trauma can result in failure to perform field sobriety tests, or in bloodshot eyes or slurred speech. Defense counsel's argument was unfounded and not based upon the evidence presented at trial.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

5

Patricia Kelly, Judge

Superior Court County of Santa Barbara

_____


John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.