Filed 1/8/14  P. v. Lopez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL RAMON LOPEZ,<br><br>Defendant and Appellant. | F064487<br><br>(Super. Ct. No. CRM009613)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara, Judge.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\*       Before Cornell, Acting P.J., Gomes, J. and Hoff, J.†

†       Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Raul Ramon Lopez of felony vandalism and misdemeanor vandalism. Lopez contends his convictions should be reversed because (1) the trial court abused its discretion when it denied his motion for a new trial based on newly discovered evidence, and (2) defense counsel rendered ineffective assistance when she failed to object to remarks made by the prosecutor in closing argument. We disagree and will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

In 2006, Lopez was caught near a graffiti-ridden fence with a backpack full of spray paint cans; his clothes were covered in wet, sticky spray paint. The fence had been spray painted with blue, triangle-shaped faces. Lopez admitted to vandalizing the fence.

In 2011, at multiple locations in Merced County, fences and buildings were vandalized. The vandalism consisted of blue, triangle-shaped faces, the monikers "Musket" and "Reson," the name of two tagging crews, "FRNK" and "STDR," and the number "666." The letters "MK" and "RS" also were spray painted.

Lopez's apartment was searched and sheriff's deputies found graffiti paraphernalia and notebooks with drawings similar to the graffiti found throughout Merced County. The deputies found markers, spray paint, and slap tags, which are stickers. Some slap tags had "666" on them; others had "MK." The drawings in the notebook included the word "Reson" and the letters "FRNK" and "STDR." A spray-painted canvas found at the apartment had "Reson" spray painted in the corner; Lopez admitted to being the one who spray painted the canvas.

2.

On March 23, 2011, the Merced County District Attorney filed an information charging Lopez with felony vandalism, a violation of Penal Code section 594, subdivisions (a)(1) and (b)(1),[1] and misdemeanor vandalism, a violation of section 594, subdivision (b)(2)(A).

Trial began on September 27, 2011. Sheriff's Deputy Lucas Hukill testified as an expert on graffiti and vandals who create the graffiti. Hukill testified that "FRNK" stood for "For Reasons Not Known" and "STDR" stood for "Stop The Devil's Rejects"; both groups were tagging gangs or crews. The two crews were associated with one another. Hukill also testified that it is common for one tagger to have more than one moniker. There were several reasons for using more than one moniker: to confuse law enforcement, the tagger had switched crews, or the tagger was acting on his own and needed to use a moniker not associated with any tagging crew. In Hukill's opinion, Musket and Reson were the same person and that person painted the blue triangle-shaped faces and the "666" found throughout Merced County.

Lopez presented testimony from Steven Rotman, who had published books titled Bay Area Graffiti and San Francisco Street Art. Rotman was from the San Francisco Bay area and spent time photographing graffiti in the Bay Area and posting the photos on a Web site. Rotman opined that Reson and Musket were not the same person because their graffiti art did not appear to be executed with the same ability; it was unusual for one person to spray both his monikers at one graffiti location; and it was rare for a graffiti artist to have more than one moniker.

Rotman also testified that he had seen the graffiti found in the Merced County area around the Bay Area beginning in 2009. The graffiti in the Bay Area included the triangle-shaped faces and the "MK" moniker. Rotman testified, however, that the "K" was actually a "U." According to Rotman, "MU" stood for Musket or Muerte, who was

_____

[1]All further statutory references are to the Penal Code unless otherwise stated.

3.

the same person with two monikers. Rotman opined that the slap tags found in Lopez's apartment had "MU" and not "MK" on them; the slap tags were mass produced and common in the Bay Area. Rotman had never seen the "666" in the Bay Area.

Lopez's girlfriend, Janee Butler, testified that she shared the apartment with Lopez and that their former roommate, Nicholas Thomas, was the one who had brought the spray paint to the apartment and had drawn in the notebooks. Butler testified that Lopez did not have a moniker; Lopez had not traveled to the San Francisco area for years; and she had never seen Lopez write in the notebooks.

Thomas testified that he had lived with Lopez and Butler for awhile, but he took all his possessions with him when he moved out. The notebooks and slap tags did not belong to him and he had never brought spray paint into the apartment he previously shared with Lopez. Thomas testified he did not spray paint "MK" or "Reson." Thomas was being prosecuted for a graffiti incident that took place in 2008.

During closing argument, the prosecutor made a few comments to the effect that graffiti lowers property values; graffiti is a cowardly, destructive act; the jury needed to telegraph to the community that graffiti will not be tolerated; graffiti is not art; and graffiti is vandalism. Defense counsel did not object to any of these remarks.

On October 6, 2011, the jury found Lopez guilty of both counts. Lopez filed a motion for new trial on January 26, 2012. The basis of the motion was newly discovered evidence. Lopez claimed to have discovered a photographer who, while photographing a store in San Francisco, saw someone spray paint "MU" or "MK" on a wall; the person went by the moniker "Muerte." The photographer did not know Muerte's real name, but did know that Lopez was not Muerte.

The prosecution opposed the motion for new trial. The trial court conducted a hearing on the motion on February 28, 2012. The trial court denied the motion.

Imposition of sentence was suspended and Lopez was placed on probation for 36 months.

4.

## DISCUSSION

Lopez raises two issues in this appeal. First, he contends the trial court abused its discretion in denying his motion for new trial. Second, he contends defense counsel rendered ineffective assistance when counsel failed to object to comments made by the prosecutor in closing argument.

## I.     No Ineffective Assistance of Counsel

Lopez contends defense counsel rendered ineffective assistance because counsel failed to object to remarks made by the prosecutor in closing argument, remarks Lopez contends appealed to the jury's passion, prejudice, pecuniary interests, and other societal pressures. We conclude there was no prejudicial ineffective assistance of counsel.

### *Factual background*

The specific comments made by the prosecutor that Lopez asserts were improper are set forth below. The first paragraph sets forth the remarks made by the prosecutor at the opening of her closing argument, the next two paragraphs were comments made at the end of closing argument, and the last paragraph is comments made during rebuttal.

> "Graffiti has become everyone's eyesore and everyone's problem. It generates fear of neighborhood crime and instability. It's costly. It's destructive. It lowers property values and sends a message that the residents of the community are not concerned with the appearance of their neighborhood. Graffiti is not art. It's vandalism and it's against the law."

> "Ladies and gentlemen of the jury, this is not a victimless crime. The defendant hasn't only victimized every hard working business owner in this community, but he's victimized every law abiding resident in this community. This trial and this trail of evidence has finally come full circle and exposed the identities of the graffiti vandals who committed these cowardly, destructive acts under the cloak of darkness.

> "That graffiti vandal is sitting before you. That graffiti vandal is [Lopez]. Hold the defendant accountable for those cowardly acts that he has committed under the cloak of darkness."

> "And now, ladies and gentlemen, it is your responsibility to telegraph to the community that graffiti will not be tolerated, and the

5.

graffiti vandals who commit these destructive crimes will say [*sic*] held accountable for their actions."

There was no objection to any of these remarks by defense counsel.

*Analysis*

"The burden of proving ineffective assistance of counsel is on the defendant. [Citation.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 707.) A criminal defendant must show both deficient performance ("that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates") and prejudice ("that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings)." (*People v. Price* (1991) 1 Cal.4th 324, 386.) If a defendant fails to prove either one of these components, the claim of ineffective assistance of counsel fails. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 (*Rodrigues*).)

Regardless of whether the prosecutor's comments were improper, Lopez was not prejudiced. Prosecutorial misconduct requires reversal only if it prejudices the defendant. (*People v. Fields* (1983) 35 Cal.3d 329, 363.) Where it infringes upon the defendant's constitutional rights, reversal is required unless the reviewing court determines beyond a reasonable doubt that the misconduct did not affect the jury's verdict. (*People v. Harris* (1989) 47 Cal.3d 1047, 1083.) Prosecutorial misconduct that violates state law is cause for reversal only when it is reasonably probable that a result more favorable to the defendant would have occurred had the prosecutor refrained from the objectionable conduct. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133 (*Barnett*).)

Here, the comments made by the prosecutor were interspersed with a detailed recitation of the elements of the offenses and the facts of the case establishing those elements. The objected-to comments were not the focus of the prosecutor's closing argument; a recitation of the evidence supporting the elements of the offenses was the focus. Even assuming for the sake of argument that the comments constituted an

improper appeal to the jurors, the jurors were instructed to evaluate and decide the case based upon the evidence, not the comments of the attorneys in the case. The jurors were instructed not to let bias, sympathy, prejudice, or public opinion influence their decision, to follow the instructions given by the trial court, and that if remarks from the attorneys conflicted with the instructions, jurors were to follow the instructions.

"'[A]rguments of counsel "generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law." [Citation.]' [Citation.] 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." [Citation.]' [Citation.]" (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268.)

The evidence in the case established that deputies found slap tags, spray paint, markers, and notebooks with drawings similar to the graffiti that was the basis of the current charges in Lopez's apartment; the notebook had the name "Reson" inside. A spray-painted canvas was in Lopez's apartment, with the moniker "Reson" sprayed on the canvas; Lopez admitted spraying the canvas and the placing the moniker "Reson" on the canvas. Lopez previously had admitted and been convicted in 2006 of spray painting graffiti on a fence; the 2006 graffiti was the blue triangle-shaped faces similar to those used in the 2011 graffiti.

In light of the evidence connecting Lopez to the offenses and the instructions given the jury, it is not reasonably probable that a result more favorable to Lopez would have occurred had the prosecutor refrained from making the challenged remarks. (*Barnett, supra,* 17 Cal.4th at p. 1133.) Because Lopez has failed to demonstrate that he

7.

suffered any prejudice from the remarks, the claim of ineffective assistance of counsel fails. (*Rodrigues, supra,* 8 Cal.4th at p. 1126.)

## II.    Motion for New Trial

Lopez contends the trial court abused its discretion when it denied his motion for new trial on the basis of newly discovered evidence that Lopez contends exonerated him. He is incorrect.

### *Factual summary*

Following the jury verdict, Lopez filed a motion for new trial. He claimed that a new witness had been discovered who could testify that Lopez was not the person known as Musket or Muerte. In an attached declaration, the newly discovered witness, Joshua Blank, stated that he was a photographer in San Francisco. About eight months previously, Blank had been photographing a building in the Bay Area when some men arrived and began spray painting the building. One person doing the spray painting was known as Muerte and Blank was allowed to photograph the man, so long as he did not photograph the man's face. Although Blank did not know Muerte's real name, he knew that Muerte operated mostly around Oakland and Lopez was not Muerte.

The prosecutor opposed the motion on various grounds, including that Blank's declaration was vague and lacked sufficient credibility to support a new trial in that Blank did not attach any photographs he took of Muerte or the graffiti Blank saw Muerte spray on the building; the declaration contained inadmissible hearsay; Lopez could have produced this evidence before the conclusion of trial by exercising due diligence; and the evidence was cumulative.

The trial court heard and ruled on the motion on February 28, 2012. In denying the motion, the trial court determined that Blank's declaration did not contradict the evidence against Lopez; Lopez failed to establish that the outcome of the trial would be different if the evidence had been produced at trial; and Lopez could have produced the evidence before the conclusion of trial by exercising due diligence.

*Analysis*

Section 1118 authorizes grant of a new trial based upon newly discovered evidence. The applicable standard is well established:

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]" (*People v. Turner* (1994) 8 Cal.4th 137, 212.)

"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' [Citations.]" (*People v. Williams* (1988) 45 Cal.3d 1268, 1318.) The appellate court may base its affirmance of the trial court's decision solely on the unlikeliness of a different result on retrial. When it does so, it need not address the remainder of the listed factors. (See, e.g., *People v. Delgado* (1993) 5 Cal.4th 312, 329, fn. 7.) The credibility, as well as the materiality, of the newly discovered evidence is relevant. (*Id.* at p. 329.)

Denial of the new trial motion was not an abuse of discretion because the newly discovered evidence likely would not have altered the outcome of Lopez's trial. Had Blank testified that he saw graffiti in the Bay Area similar to that found in Merced County and that it was spray painted by someone other than Lopez, is not likely to have changed the outcome of the trial. First, the newly discovered evidence was cumulative; and second, it did not overcome the evidence against Lopez connecting him to the offenses.

The evidence set forth in Blank's declaration in support of the new trial motion was cumulative of the testimony presented by the defense expert, Rotman, and Butler,

9.

Lopez's girlfriend. Rotman testified that the graffiti found in Merced County was similar to that found in the Bay Area, including the "MU" or "MK" graffiti and the triangle-shaped faces. Butler testified Lopez did not have a moniker and had not been to the Bay Area in years.

The evidence against Lopez was very strong: the canvas in his apartment with "Reson" spray painted on it, which Lopez admitted doing; the notebooks in the apartment with drawings similar to the graffiti in Merced County, the name "Reson" inside the notebook, and the name of Lopez's young son inside the notebook; and the 2006 graffiti offense that Lopez admitted, where the graffiti was substantially similar to the graffiti that was the basis of the current charges.

**DISPOSITION**

The judgment is affirmed.