Filed 6/3/14  P. v. Warren CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KENNETH RAYMOND WARREN,<br><br>        Defendant and Appellant. | A137317<br><br>(Contra Costa County<br> Super. Ct. No. 5-1120633)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 29, 2014 be modified as follows:

1.  In the title section, the Superior Court Number should be 5-1120633.

DATED:                    _____

                    Pollak, Acting P. J.

1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KENNETH RAYMOND WARREN,<br><br>        Defendant and Appellant. | A137317<br><br>(Contra Costa County<br>  Super. Ct. No. 5-110573-3) |

This is an appeal from judgment following appellant Kenneth Raymond Warren's conviction on three felony drunk driving counts with enhancements for prior offenses. The trial court sentenced appellant to a total prison term of six years and eight months. He challenges this judgment on the sole ground that the prosecutor engaged in misconduct when arguing to the jury with respect to the reasonable doubt standard. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2011, a criminal information was filed charging appellant with: (1) felony driving under the influence of alcohol (DUI) within ten years of a prior felony DUI violation (Veh. Code, §§ 23152, subd. (a), 23550.5) (count one);[1] (2) misdemeanor hit-and-run driving (§ 20002, subd. (a)) (count two); (3) misdemeanor driving without a valid driver's license (§ 14601.2, subd. (a)) (count three); (4) felony DUI within ten years of a prior felony DUI violation (§§ 23152, subd. (a), 23550.5) (count four); and

---

[1]        Unless otherwise stated, all statutory citations herein are to the Vehicle Code.

1

(5) felony driving with a blood-alcohol level of 0.08 percent or greater within ten years of a prior felony DUI violation (§§ 23152, subd. (b), 23550.5) (count five).  The information alleged with respect to counts one, four and five that appellant had sustained two prior felony DUI convictions within the meaning of section 23550.5, and had served three prior prison terms within the meaning of Penal Code section 667.5, subdivision (b).  Finally, the information alleged appellant committed the current offense while on bail awaiting resolution of another felony offense within the meaning of Penal Code section 12022.1.

The charges and allegations set forth above stemmed from events occurring on the evenings of February 2, 2011 and September 16, 2011, in Pittsburg.  Because the only issue raised on appeal relates to the circumstances of appellant's trial rather than of his underlying offenses, we describe the events of these evenings only briefly to provide the relevant background to the trial.

On February 2, 2011, appellant, driving a white Acura, hit from behind a black Cadillac driven by Shlanda Robinson.  This accident was heard by a police officer, who then observed the white Acura speed off.  The officer also observed Robinson pull into a nearby gas station, and so approached her to determine what had occurred.  Robinson told the officer her vehicle had been struck by the white Acura and described the driver as an "African-American male, dark in skin color, mustache."

The officer left to pursue the white Acura, and was able to find and stop the vehicle a short time later.  The driver, who matched Robinson's description and was later identified as appellant, smelled of alcohol and had red eyes and slurred speech.[2]  The officer conducted a series of field sobriety tests, which appellant failed. Appellant was thus taken to the police station, where he subsequently took a breath test registering a

_____

[2]     In addition, appellant's Acura had black paint on its front bumper, while Robinson's vehicle had white paint on its rear bumper, as well as a small crack.  Another officer escorted Robinson to the location where appellant had been detained, and she identified him as the person who had hit her vehicle.

2

blood-alcohol content of 0.24 percent, roughly three times the legal limit. Appellant was placed under arrest.

Months later, on the night of September 16, 2011, another officer stopped appellant's vehicle for having a nonfunctioning rear license plate lamp. Appellant "muddl[ed] through" his wallet for several minutes when asked by the officer to produce his driver's license. The officer noticed appellant had an "extremely heavy" alcohol odor, bloodshot and watery eyes, and slurred speech. Appellant subsequently failed another series of field sobriety tests and a produced a breath test registering a blood-alcohol level of 0.20 percent. Appellant was again arrested.

On September 10, 2012, appellant pleaded no contest to count three, driving without a valid license, and the remaining counts were renumbered accordingly.

On September 19, 2012, a jury found appellant guilty of the felony drunk driving offenses (counts one, three, four), but could not reach a verdict with respect to the misdemeanor hit-and-run driving offense (count two), resulting in a mistrial. The on-bail enhancement was subsequently dismissed, and the court found true the remaining allegations relating to appellant's prior offenses.

On October 3, 2012, the trial court sentenced appellant to an aggregate term of six years and eight months in prison. This timely appeal followed.

## DISCUSSION

Appellant's sole argument on appeal is that the prosecutor engaged in misconduct during trial by mischaracterizing to the jury the standard for establishing a criminal defendant's guilt beyond a reasonable doubt. The relevant law is not in dispute.

"Although counsel have 'broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law. [Citation.]' " (*People v. Mendoza* (2007) 42 Cal.4th 686, 702). And more specifically, "it is misconduct for counsel to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1265-1266.)

3

However, to actually establish a basis for reversing the judgment based on prosecutorial misconduct in misstating the law, a defendant must show more than the fact of misconduct. Rather, as the California Supreme Court has explained, prosecutorial misconduct violates the United States Constitution only " ' "when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 819. See also *People v. Salcido* (2008) 44 Cal.4th 93, 152.) And, moreover, the prosecutorial misconduct must have caused the defendant prejudice, such that the court is satisfied that, absent the misconduct, it is reasonably probable the defendant would have received a more favorable result at trial. (*People v. Williams* (2009) 170 Cal.App.4th 587, 635 ["we do not reverse a defendant's conviction because of prosecutorial misconduct unless it is reasonably probable the result would have been more favorable to the defendant in the absence of the misconduct"], citing *People v. Barnett* (1998) 17 Cal.4th 1044, 1133.)

In this case, appellant contends certain of the prosecutor's statements to the jury during closing arguments regarding the reasonable doubt standard – in particular, certain statements in which the prosecutor discussed reasonable doubt in numeric or percentage terms and discussed the concept of reasonableness in terms of "common sense and life experience" – violated his fundamental right to a fair trial. Appellant reasons that the prosecutor "improperly quantified the concept of reasonable doubt, diluting the constitutional standard of proof beyond a reasonable doubt and impermissibly telling the jury they could convict based on lesser proof," and "also trivialized the standard, suggesting that reasonable doubt is nothing more than everyday common sense." The following facts are relevant to his claim.

As an initial matter, we must point out the first mention by counsel of the reasonable doubt standard in numeric or percentage terms was in fact made by defense

4

counsel, not the prosecutor. Omitted from appellant's brief is the fact that, during voir dire, defense counsel questioned a prospective juror about how she would react if the evidence showed a "50/50" probability of guilt or innocence. When the prospective juror failed to immediately respond, defense counsel added: "I guess what I'm asking is, could you vote not guilty if you are not positive of innocence, if there's still some doubt in your mind, well, you think possibly ─." At this point, the trial court interrupted defense counsel: "Folks, this is the law: If, in fact, there are two reasonable interpretations of the evidence, one of them points to innocence, the other one points to guilt, it is your duty to point to that which points to innocence. [¶] So if there's a 50/50, [appellant] gets the benefit of the doubt. You vote not guilty. [¶] . . . [¶] You have to be convinced beyond a reasonable doubt and that is a doubt which is based on reason. [¶] Not some doubt or some possible doubt."

Seemingly undeterred, defense counsel continued this line of questioning with the next prospective juror: "[C]ould you vote not guilty even if it's not a hundred-percent-to-zero situation, if it's a 50/50 situation, could you still vote not guilty under those circumstances?" When the prosecutor objected that counsel was again misstating the law, the court offered this additional instruction: "With my clarification it is not—the issue is if you're not convinced beyond a reasonable doubt, do you see yourself in a position of being able to vote not guilty." After the prospective juror indicated she could follow this instruction, the voir dire continued.

In apparent response to defense counsel's explanation of reasonable doubt, the prosecutor subsequently addressed another prospective juror as follows: "[E]ach count has to be proved beyond a reasonable doubt. Now, I just want to make clear that proof beyond a reasonable doubt doesn't have any percentage attached to it. You don't have to be 50 percent sure. You don't have to be 51 percent sure. 90 percent sure. 99 percent sure. There's no percentage. It's just whether or not there's a doubt and whether that doubt is reasonable. [¶] Is everyone okay with that?" The prospective jurors answered in the affirmative and, ultimately a jury was selected.

5

The next significant incident involving an attorney's statement to the jury regarding the reasonable doubt standard occurred during closing arguments. This time, the prosecutor broached the subject, stating:

"The standard of proof in this case is proof beyond a reasonable doubt. Reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.

"Now, proof beyond a reasonable doubt need not eliminate all possible doubt, and that's because everything in life is open to some possible or imaginary doubt.

"This is going to be in your jury instructions. Proof beyond a reasonable doubt, not proof beyond all possible or imaginary doubt. That is the burden of proof in this case. That is the burden of proof you hold the People to.

"I must prove these charges beyond a reasonable doubt, in order for you to convict. That word 'reasonable' will come up several times."

Then, after addressing the evidence in the case, the prosecutor returned to the reasonable doubt standard, offering the following explanation that appellant now challenges as misconduct: "In determining whether or not there's reasonable doubt in this case with regard to the charges, it's important to remember that there are no percentages assigned to proof beyond a reasonable doubt. In fact, there's no percentages at all in criminal law. [¶] You don't have to be 50 percent sure Mr. Warren is guilty. You don't even have to be 51 percent sure, 90 percent sure, 99 percent sure. There are no percentages."

Consistent with appellant's contentions on appeal, defense counsel objected that the prosecutor's argument "misstates the law." The court advised the prosecutor to rephrase, and the prosecutor continued: "You do not have to be 50 percent sure, to convict Mr. Warren. You do not have to be 51 percent sure, 75 percent sure. You don't have to be 90 percent sure or 99 percent sure."

Defense counsel repeated his previous objection, prompting the court to address the jury as follows: "Folks, the burden of proof is proof beyond a reasonable doubt. I will give you the legal definition. [¶] The attorneys' arguments as to what reasonable doubt is— you need to disregard that, if you feel it's going to conflict with the

6

instructions that I have already given you on reasonable doubt and which I will continue to give you at the conclusion of the trial. [¶] Proceed, ma'am."

The prosecutor thereafter continued: "Listen closely to when the Court instructs you on the burden of proof in this case. You will not hear a percentage associated with it, and that's because the lawmakers understand that they cannot tell you what 'reasonable' means. They cannot define it for you. [¶] This is when we ask you to use your common sense and life experience. You have to decide whether or not a doubt— should you have one—is reasonable." Similarly, at the conclusion of her closing argument, the prosecutor summarized the reasonable doubt standard as follows: "I'll just remind you that the burden of proof in this case is proof beyond a reasonable doubt, doubt that's based on reason, on logic, not on speculation, not on a hunch, not on a would-coulda-shoulda, on a reason. [¶] You know, we ask you to leave all bias and prejudice outside of the courtroom, but we don't ask you to leave your commonsense and your life experience, and this is where that kicks in."

When time came for defense counsel's closing argument, he had this to say about the prosecution's burden to prove guilt beyond a reasonable doubt:
"Finally, when you're considering the standard [of proof] and what this means, what is before you—you'll recall that during the jury selection process, I brought up the concept of a coin flip and how 50/50 is not good enough.
"Now, I think there is some dispute—or differing accounts of what the law requires from the Defense and Prosecution, but I submit to you 50/50 is not enough and 50 percent confidence is not enough, and we know that this is so, even though we're not given percentages—I agree with that, you're not given a percentage for beyond a reasonable doubt, but we know it's more than 50/50. I'll tell you how.
"By definition, beyond a reasonable doubt is the highest standard that we have in our legal system, the highest, without any peer. There's nothing that's tied with it. It's the highest standard that we have in the legal system, okay?
"There are other standards, so, we can kind of orient ourselves and know what that standard means. [¶] One standard that is—applies in the civil context is by a

7

preponderance of the evidence, meaning more likely than not, just tipping the scales, like, 51/49 percent.

"50/50 would not even be good enough for a preponderance of the evidence, in tipping of the scales, but this standard is higher than that, because it's the highest standard.

"Beyond a reasonable doubt is higher, even, than clear and convincing evidence, which is another standard that applies in the legal system, and that's the standard that's put before the determine—the fact-finder or the person judging.

"That standard of clear and convincing evidence is before situations where the government is determining whether to take away parental rights. It must be shown beyond a preponderance, by clear and convincing evidence. This is greater, even, than that.

"So, it is certainly above 50 percent, and this is a moment to consider, again—proven or not proven is the question before you, and everyone here also committed to, at the beginning of this process—even if there's some sort of possibility in your mind, that you think could be—he might be guilty, could have done it, could very well be, but that is not good enough, that you would be willing to accept the reality of how this system works, and it is not simply a question of 'Who proved to me guilt or innocence?'

"That is not the question before you. The question before you is whether the prosecution can prove guilt beyond a reasonable doubt."

In rebuttal, the prosecutor did not repeat her argument that reasonable doubt does not correspond to any particular percentage, instead advising jurors to "[l]isten closely when the Court instructs you on what reasonable doubt is. It's doubt—reasonable doubt—proof beyond a reasonable doubt is something that leaves you with an abiding conviction. [¶] Remember, beyond a reasonable doubt is the standard of proof, not all possible doubt, not all imaginary doubt, because everything in life is subject to some doubt. [¶] . . .[¶] Listen closely. The Court is never going to tell you he likely did it, probably did it, might have done it, could have done it. You're never going to hear

8

that instruction, because that is not the state of the law.  It is simply proof beyond a reasonable doubt."

Following closing arguments, the trial court itself addressed jurors with respect to the reasonable doubt standard, giving by all accounts a compete set of standard CALCRIM instructions regarding the prosecution's burden of proof.  Nonetheless, appellant contends the prosecution's earlier comments on the subject deprived him of a fair trial.  Having considered in context and as a whole the relevant record on appeal, we disagree.

In so concluding, we first reiterate that defense counsel, not the prosecutor, first spoke of the reasonable doubt standard in terms of numbers or percentages, arguably opening the door to the prosecutor's subsequent comments that "proof beyond a reasonable doubt" has "no percentages assigned to [it]."

Moreover, the prosecutor's comments regarding the jury's inability to quantify proof beyond reasonable doubt in terms of a particular percentage is, as defense counsel admitted, an accurate statement of the law.  Indeed, as the record set forth above reflects, the prosecutor's statements regarding reasonable doubt focused on the concept that reasonable doubt is not limited to stark percentages and thus were accurate in this regard, including the prosecutor's advice to the jury to listen to and follow *the trial court's instruction* rather than to the attorney's statements on the subject.  And even assuming certain of the prosecutor's comments may have confused the jury, there nonetheless is no reasonable inference on this record that she was acting deceptively or reprehensibly given that, one, her arguments were for the most part correct statements of the law and, two, that her discussion of numbers or percentages in the context of proof beyond a reasonable doubt were responsive to defense counsel's own such statements.  (*People v. Solomon* (2010) 49 Cal.4th 792, 829; *People v. Hill, supra,* 17 Cal.4th at p. 819.)

Furthermore, the jury was subsequently given all standard CALCRIM instructions relating to the reasonable doubt standard and the presumption of innocence.  The jury was also told – repeatedly – that the attorneys' comments or questions on the law are "not evidence" and that, to the extent they conflict with the actual jury instructions, they must

9

be disregarded. Appellant has made no showing that the jury failed to follow these mandatory instructions. As such, the law requires us to presume the opposite – to wit, that the jury faithfully discharged its duties by following the court's instructions, including the instruction prohibiting it from convicting him in the absence of proof of guilt beyond a reasonable doubt. (*People v. Davenport* (1995) 11 Cal.4th 1171, 1210.)

Finally, we note the holding of appellant's own authority that "[p]rosecutorial misconduct is reviewed for prejudice. (See *People v. Mendoza, supra*, 42 Cal.4th 686, 703.)" (*People v. Katzenberger, supra*, 178 Cal.App.4th at p. 1268.) Contrary to this holding, appellant offers no showing on appeal that the prosecution's purported mischaracterizations of the reasonable-doubt standard caused him any prejudice. In fact, after failing to address the prejudice issue in his opening brief, appellant opted not to file a reply brief to rebut the prosecution's showing in the respondent's brief that the evidence of his guilt was in fact overwhelming (including, for example, the evidence of his having failed a multitude of field sobriety tests, as well as subsequent breath alcohol screening tests on the nights in question). Thus, even assuming he is correct that the prosecution overstepped the permissible bounds of advocacy, there remains no basis for disturbing the judgment. (*People v. Williams, supra,* 170 Cal.App.4th at p. 635 [while it is improper for the prosecutor to misstate the law by, among other things, attempting to lower the burden of proof, "we do not reverse a defendant's conviction because of prosecutorial misconduct unless it is reasonably probable the result would have been more favorable to the defendant in the absence of the misconduct"], citing *People v. Barnett, supra,* 17 Cal.4th at p. 1133. See also *People v. Solomon, supra,* 49 Cal.4th at p. 829.) Accordingly, the judgment must stand.

10

**DISPOSITION**

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.