Filed 9/14/16  P. v. Gaticonde CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LAURENCIO GATICACONDE,<br><br>    Defendant and Appellant. | G052080<br><br>(Super. Ct. No. 12CF1857)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

# INTRODUCTION

A jury found defendant Laurencio Gaticaconde (Defendant) guilty, as charged, as follows:  Count 1—oral copulation on a person under 14 years of age (Pen. Code, 288a, subd. (c)(1); Counts 2 and 3—commiting a lewd act upon a child under 14 years of age (*id.*, § 288, subd. (a)); Counts 4 and 5—committing a lewd act upon a person of 14 or 15 years of age and more than 10 years younger than the defendant (*id.*, § 288, subd. (c)(1)); Count 6—unlawful sexual intercourse with a minor more than three years younger than the defendant (*id.*, § 261.5, subd. (c)); and Count 7—attempted kidnapping (*id.,* §§ 207, subd. (a), 664, subd. (a)).  The trial court sentenced Defendant to a total of 14 years in prison.

Defendant argues the prosecutor committed misconduct[1] during closing argument by misstating the jury unanimity rule and, to the extent the issue was forfeited, his trial counsel was ineffective by failing to pose an objection.  We conclude the issue was forfeited and there was no ineffective assistance of counsel.  We therefore affirm.

# FACTS

We view the evidence in the light most favorable to the judgment of conviction and resolve all conflicts in its favor.  (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *In re Roark* (1996) 48 Cal.App.4th 1946, 1948, fn. 3.)

## I.

### The Incident at the Market

M., the victim, was 21 years of age at the time of trial.  She has two children—L., who was five years of age at the time of trial, and J., who was one and a half years of age at the time of trial.  M.'s mother, M.C, had been living with Defendant

---

[1]  We will use the term prosecutorial error because it is a more apt description than prosecutorial misconduct.  (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

since M. was about two years of age. Although M.C. and Defendant never married, M. thought of him as her father and called him "dad." Defendant treated M. as his own child and disciplined her. M. had an older sister by the same father, and M.C. had five children by Defendant.

On June 19, 2012, M. dropped L. off at M.C.'s house where her sister would babysit while M. was at work at a restaurant. M.'s then-boyfriend picked up M. and drove her to work. On the way, M. noticed that Defendant was following them in his truck. The boyfriend dropped M. off at a market to buy something before she reported to work. As M. was leaving the market, she saw Defendant duck behind a "little machine" vending teddy bears. M. was frightened and went back inside the market. M. thought perhaps Defendant was going to scream at her about her boyfriend.

Defendant walked up to M., grabbed her by the neck, and took her out of the market. Once outside, M. tried to get away. Defendant's keys fell to the ground and he let her go. Defendant picked up his keys, returned to his truck, and drove off. M. walked to the restaurant, where somebody dialed 911.

## II.

### M. Reports Defendant's Abuse.

Santa Ana Police Officer Le responded to the 911 call.[2] M. told Le that, when she dropped L. off at M.C.'s house, Defendant asked M. to have sex with him. He said that was the only condition for him to accept her as part of the family. M. refused. She believed that was why Defendant became angry, followed her to work, and grabbed her by the neck at the market. M. told Le that Defendant had started molesting her when she was 11 years old. Using his position of authority as a parent, Defendant persuaded M. to orally copulate him and fondle his penis with her hand. He gave her $5 for each

---

[2] Le's testimony was introduced by stipulation. Le's first name does not appear in the record.

3

time she performed either act. She had done more than 25 oral copulations and 25 fondling incidents with Defendant over a two-year period.

M. told Le that when she was 13 or 15 years of age, Defendant began having sexual intercourse with her. These incidents took place in the home, in his vehicle parked on the street, and in motels. She remembered, in particular, being taken to the Starlight Motel and Villa Motel in Stanton. Defendant stopped having sexual intercourse with M. in 2009 when she became pregnant by her then-boyfriend. She estimated having had sexual intercourse with Defendant at least 100 times between 2005 and 2009. He encouraged her to have sex with him by buying her gold jewelry and promising to take care of her.

### III.

### M.'s Covert Telephone Call to Defendant

Corporal Jaime Rodriguez of the Santa Ana Police Department's sex crimes unit arranged for M. to place a covert telephone call to Defendant. Before the call, Rodriguez asked M. to set up a meeting with Defendant in a public location where he could be taken into custody. The call was recorded, the recording was transcribed and translated from Spanish to English, and the transcription was received in evidence as exhibit No. 11.

Soon after answering the call, Defendant asked M. why she stuck up her finger at him. She said she did so because he had called her a whore. M. asked Defendant why he had followed her. He replied that he had "already told you what's going to happen to you." M. asked him why he had choked her. He replied, "[i]f I had choked you you wouldn't be talking." When M. asked, "[i]s that what you want, to kill me," Defendant replied, "[i]f it's possible[,] that's how it's going to be."

M. told Defendant that she no longer knew whether L. was his son or the son of her ex-boyfriend. She said, "[y]ou told me that if L[.] was yours that you were

4

going to love him much more." He replied, "[w]hy are you telling that now?" M. said, "several times we did it without protection." Defendant replied, "[w]ell, yes, but I never (ejaculated)[3] inside of you."

Later in the call, M. asked Defendant, "why did you do all that to me if you knew that I was a minor when you did all that to me?" Defendant asked M. why she was asking these questions now. She asked again, "why did you do it with me?" He answered, "you provoked me." M. asked how an 11 year old could provoke. In response, Defendant asked M., "[y]ou don't know how to provoke?"

M. told Defendant she had gone to church and told the pastor that, when she was little, Defendant would force her to have oral sex with him. M. asked Defendant, "[w]hy did you force me to do all that then?" Defendant said, "I didn't force you" and "[y]ou wanted to." When M. mentioned she might tell M.C., Defendant said, "you promised me that you were never going to tell her, that she would never know." M. asked Defendant why he treated her like a whore. He replied, "you act like you have no self-respect." She told Defendant she had never asked him to touch her, she was a little girl and did not know, and he said to her, "[i]t's nothing bad. You're only going to suck on it a little." In response, Defendant said: "So what? You know how to do it well." Defendant later said: "I love you so fucking much, what you do hurts me, what I do to you hurts me . . . even if I don't feel it at the moment, but once I do it . . . I think about what I do when I'm alone, about what I did." (Ellipses in original.)

M. asked Defendant if he would meet her and talk in person. They agreed to meet at a Carl's Jr. restaurant near her school. Defendant said, "you're going to have the police there . . . to catch me at once." M. denied it.

---

3 In the transcription and translation of the telephone conversation, parentheses indicate "[n]ot a literal translation but best interpretation of a sentence."

# IV.

## The Police Interview of Defendant

The police were indeed at the Carl's Jr. restaurant and arrested Defendant when he arrived. Rodriguez and his partner, Detective Ed Zaragoza, spoke to Defendant at the police station. Defendant waived his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 and agreed to talk. The interview was conducted in Spanish. The interview was audio-recorded, the recording was transcribed and translated from Spanish to English, and the transcription was received in evidence as exhibit No. 13.

When asked if he was M.'s biological father, Defendant said he was her stepfather but had raised her since she was two years old. He claimed her accusations against him were pure lies.

Rodriguez said he had listened to the entire telephone conversation between Defendant and M. and the conversation had been recorded. Rodriguez asked Defendant directly whether he ever had sexual relations with M. Defendant replied, "I'm not going to (deny it) . . . but I never forced her."[4] (Parentheses & ellipsis in original.) Asked when it started, Defendant said when M. was 11 or 12 years old. M. wanted things such as cell phones, clothes, and shoes, and Defendant agreed to buy them for her if she would touch his penis with her hand. Defendant and M. started having sexual relations later, when she was 13 or 14 years old.

Defendant said that starting when M. was 11 or 12 years old he would have her orally copulate him. Rodriguez asked Defendant, "[h]ow many times did she touch it and suck it?" Defendant said about once a week while M. was ages 11 to 14. When M. orally copulated him, Defendant did not ejaculate into her mouth. Defendant admitted that he started having sexual intercourse with M. about once a month starting when she was age 14. They would have intercourse in hotels throughout Santa Ana and in their

---

[4] Parentheses indicate "[n]ot a literal translation but best interpretation of a sentence."

home.  He would buy her things or pay her money in exchange.  Defendant never ejaculated inside of her.  He admitted that at this time he would fondle and suck on her vagina and that he treated M. like a wife.  Defendant claimed he never forced her.  The sexual encounters ended when M. was 17 years old.  Defendant told M. not to tell anybody because if she did, he would be in trouble.

## DISCUSSION

## I.

## Defendant Forfeited Any Direct Claim
## of Prosecutorial Error.

The sole basis for Defendant's challenge to the judgment is a statement made by the prosecutor in closing argument to explain the unanimity rule as applied to counts 1, 2, and 3.  The prosecutor argued as follows, with the challenged portion in italics:

". . . The first count is oral copulation.  This is M[.] putting her mouth on the defendant's penis.  And the date range is from the time that she turned 11 until the day before her 14th birthday.  In order to determine whether or not I have proved that crime, look at CALCRIM [No.] 1080.

"The second count is M[.] fondling the defendant's penis.  This is from 11 years old to the day before her 14th birthday.  There are two charges for this crime and the CALCRIM is [No.] 1110.  And, as you know, the evidence showed that this didn't happen just twice and the oral copulation didn't happen just once, we have evidence that it happened approximately 25 times for the masturbation, which is counts 2 and 3 and we have approximately 25 times for the oral copulation.

"*Now, when I ask you for guilty verdicts on those crimes, you all just have to decide for count 1, did it happen once, just once?  If you all agree it happened just once, we're good.  Same thing for counts 2 and 3, do you all agree it happened at least*

7

*twice?  We have evidence of 25; but if you all agree on at least two of these, we're good, guilty.*"  (Italics added.)

Defendant's trial counsel did not object to the challenged argument. Failure to object or request an admonition leads to forfeiture of a claim of prosecutorial error unless an objection or request for admonition would have been futile.  (*People v. Panah* (2005) 35 Cal.4th 395, 462; *People v. Young* (2005) 34 Cal.4th 1149, 1188.) Nothing in the record suggests the trial court would not have entertained an objection if made or admonished the jury if requested.  Defendant concedes his trial counsel's failure to object forfeited his direct claim of prosecutorial error.

## II.

## There Was No Ineffective Assistance of Counsel.

Defendant contends his trial counsel was ineffective for not objecting to the prosecutor's closing argument.  To prevail on a claim of ineffective assistance of counsel, Defendant must prove both (1) his attorney's representation was deficient in that it fell below an objective standard of reasonableness under prevailing professional standards; and (2) his attorney's deficient representation subjected him to prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Cain* (1995) 10 Cal.4th 1, 28.) Prejudice means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington*, *supra*, at p. 694.)  A reasonable probability means a "probability sufficient to undermine confidence in the outcome."  (*Ibid.*)

In order to address Defendant's claim of ineffective assistance of counsel we first consider the law regarding proof of multiple sex crimes and the unanimity rule. In cases charging multiple sex crimes over a specific period of time, the prosecution can meet its burden of proof with generic testimony.  (*People v. Jones* (1990) 51 Cal.3d 294, 314, 315-316 (*Jones*).)  In *Jones*, each of the six counts at issue charged one event in a

8

different two-month period.  (*Id.* at p. 303.)  The victim of these counts testified regarding the molestations.  (*Id.* at p. 301.)

In *Jones*, the California Supreme Court held the victim's generic testimony constituted substantial evidence supporting those six convictions:  "[I]n determining the sufficiency of generic testimony, we must focus on factors other than the youth of the victim/witness.  Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient?  Clearly not.  As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction.  [Citations.]  [¶]  The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy).  Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping').  Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period.  Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction."  (*Jones*, *supra*, 51 Cal.3d at pp. 315-316.)

When a defendant is charged with multiple sex offenses over a given period of time, a unanimity instruction is required if the evidence indicates the jurors might disagree as to the particular act or acts the defendant committed.  (*Jones*, *supra*, 51 Cal.3d at pp. 321-322.)  "In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, *the standard unanimity instruction* should be given.  [Citation.]  But when there is no reasonable likelihood of juror

9

disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given *a modified unanimity instruction* which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Ibid.*, italics added.)

In this case, the trial court gave CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense Presented), which encompasses both the standard unanimity instruction and the modified unanimity instruction described in *Jones*. CALCRIM No. 3501 gives the jury alternatives for finding the defendant guilty. The first is the standard unanimity rule: "1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense]" (CALCRIM No. 3501.) The alternative is the modified unanimity rule: "2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses charged]." (*Ibid.*)

The trial court instructed the jury with CALCRIM No. 3501 modified to read as follows:

"Regarding counts 1, 2, 3, 4[,] 5 and/or 6, the People have presented evidence of more than one act to prove that the defendant committed these offenses. On all of these counts you must not find the defendant guilty unless, one, you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; or, two, you all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and [have] proved that the defendant committed at least the number of offenses charged."

Defendant argues the prosecutor misstated the standard unanimity rule by telling the jury it could find him guilty if it agreed on at least one act (or two acts)

without telling the jury it had to be unanimous as to which act (or two acts) occurred. The prosecutor was correct that the jury only had to agree on at least one act or two acts but erred by not adding that the jury also had to agree unanimously on which act or acts occurred. It is error for the prosecutor to misstate the law during argument. (*People v. Huggins* (2006) 38 Cal.4th 175, 253, fn. 21; *People v. Otero* (2012) 210 Cal.App.4th 865, 870; *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1266.) Defendant's trial counsel therefore had legal ground for objecting to the prosecutor's argument.[5]

But to the extent his counsel's performance was deficient for not objecting, Defendant suffered no prejudice. First and foremost, this was the quintessential case for the modified unanimity instruction (alternative 2 of CALCRIM No. 3501) in that the only question was whether Defendant committed all of the acts alleged or none of them. "[B]ecause credibility is usually the 'true issue' in these cases, 'the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations].'" (*Jones*, *supra*, 51 Cal.3d at p. 322.)

The prosecution presented generic evidence of consistent, repetitive acts by Defendant of oral copulation and fondling while M. was between the ages of 11 and 14, and of sexual intercourse while M. was between the ages of 14 and 17. At trial, Defendant denied any wrongdoing. His trial counsel argued that it was contrary to common sense that any abuse occurred given the family's living situation and that M. had lied in the past to get Defendant in trouble. Trial was an all-or-nothing proposition: The jury either "'believe[d] the [evidence] that the consistent, repetitive pattern of acts

---

[5] We do not decide whether Defendant's trial counsel might have had a "rational tactical purpose" for not objecting. (*People v. Lucas* (1995) 12 Cal.4th 415, 442.)

11

occurred or disbelieve[d] it.'" (*Jones, supra,* 51 Cal.3d at p. 322.) Thus, to convict Defendant as charged, the jury would have unanimously agreed he committed all the acts alleged to have occurred.

The evidence that Defendant did commit all the acts alleged was extremely strong. That evidence included Le's stipulated testimony and the transcript of M.'s telephone conversation with Defendant. Particularly damning was evidence of the police interview in which Defendant admitted committing the alleged sex acts against M. Rodriguez testified about the interview, and the transcript was received in evidence. Defendant not only admitted the acts of manual and oral copulation and of sexual intercourse, but his statements were consistent with what M. had told Le. Given this evidence, we conclude, beyond a reasonable doubt, the jury convicted Defendant by finding unanimously that he committed all the acts alleged and that he committed at least the number of offenses charged. Thus, there was no reasonable probability the result of the trial would have been different if Defendant's trial counsel had objected to the prosecutor's misstatements about the standard unanimity rule.

In addition, the prosecutor gave a correct statement of the standard unanimity rule later in closing argument. The prosecutor stated: "[I]f you all agree that there was at least one act of oral copulation, which we all know that there was more than one, but if you all just agree on one, then you can sign[] the form on count 1. Same thing on count 2 and count 3. You do all have to agree that there was at least one, *and you have to agree on the same one*; but if you all do agree, you can sign those forms." (Italics added.) Defendant contends that statement "confused the issue" and "neither clarified nor corrected the original mis-statement of the law." We disagree. The latter statement corrected the prior incorrect statement and had the effect of increasing to a near certainty the likelihood the jury followed the trial court's unanimity instruction.

12

## DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.