Filed 6/5/26  P. v. Cortez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B338553 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA514279) |
| v. | |
| DANIEL CORTEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant and appellant Daniel Cortez (Cortez) guilty of two counts of continuous sexual abuse of a child under 14 years old (Pen. Code § 288.5, subd. (a))[1] as to victims A.F. (count 1) and L.C. (count 9); four counts of oral copulation or sexual penetration of a child 10 years old or younger as to L.C. (§ 288.7, subd. (b); counts 2, 3, 5 & 6); two counts of sexual intercourse or sodomy with a child 10 years old or younger as to L.C. (§ 288.7, subd. (a); counts 4 & 7); and one count of a lewd act on a child under 14 years old as to L.C. (§ 288, subd. (a); count 8). The trial court sentenced Cortez to a total prison term of 26 years plus 50 years to life.

On appeal, Cortez contends that (1) the trial court committed instructional error by (a) failing to instruct the jury that sexual penetration of a child is a specific intent crime and (b) instructing the jury with CALCRIM No. 1193 on child sexual abuse accommodation syndrome (CSAAS); and (2) the prosecutor committed misconduct during closing argument and that defense counsel was constitutionally inadequate for failing to object.

We affirm.

## FACTS

Because Cortez does not challenge the sufficiency of the evidence supporting his convictions, we only briefly summarize some of the evidence adduced at trial. (See *People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

Cortez is the paternal uncle of sisters A.F. and L.C. When A.F. was a child, Cortez began to insist that she "kiss him the right way" and showed her how to kiss him "tongue to tongue."

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Cortez's sexual abuse of A.F., which began when she was about 10 years old, escalated when she was 14 years old. One morning, Cortez entered A.F.'s bedroom, woke her up, and told her that they "were going to do something different this time." Cortez pulled down A.F.'s pants, exposed his penis, and inserted his penis into her vagina.

The sexual abuse continued throughout A.F.'s high school years. Cortez would enter the bathroom while A.F. was showering and have intercourse with her. Cortez would also molest A.F. in the back seat of her father's tow truck.

Cortez began molesting L.C. when she was around seven or eight years old. Cortez entered a bathroom occupied by L.C. and told her to kiss him. He exposed himself and instructed L.C. to perform oral sex on him. Cortez touched and placed his mouth on L.C.'s vagina.

When L.C. was around nine or 10 years old, Cortez demanded that she perform oral sex on him. When she refused, he wrapped one hand around her neck, began choking her, and forced her to perform oral sex. He then performed oral sex on her and attempted to insert his penis into her vagina. Cortez's sexual abuse of L.C. continued until she was about 11 or 12 years old.

Cortez's son, A.C., and Cortez's former stepdaughter, Z.V., testified about incidents of sexual abuse inflicted upon them by Cortez when they were children.

Dr. Jayme Jones, a clinical psychologist, testified as an expert on CSAAS. Dr. Jones explained that CSAAS is "a model . . . to help people understand the behavior of children who had been sexually abused." There are five components of CSAAS: (1) secrecy; (2) helplessness; (3) accommodation; (4) delayed

disclosure; and (5) recantation. CSAAS is not a predictive or diagnostic tool. Nor does it provide a method for determining whether a person is telling the truth.

Cortez testified in his own defense and denied ever sexually abusing A.F., L.C., A.C., or Z.V.

## DISCUSSION

## I. Asserted Instructional Errors

Cortez raises two claims of instructional error, which we review de novo. (*People v. Frazier* (2024) 16 Cal.5th 814, 839.)

### A. *Required intent for sexual penetration of a child*

Cortez first contends that the trial court erred by failing to instruct the jury that sexual penetration of a child (§ 288.7, subd. (b)) is a specific intent crime.

#### 1. The trial court erred

Cortez was charged with four counts of oral copulation or sexual penetration of a child 10 years old or younger as to L.C. (§ 288.7, subd. (b).) Of these counts, count 6 was based on sexual penetration of L.C.

The trial court instructed the jury with CALCRIM No. 252, which required the court to identify the alleged offenses. In relevant part, the court informed the jury that the crime of oral copulation or sexual penetration of a child 10 years old or younger "require[s] general criminal intent[.]" The instruction further provided: "For you to find a person guilty of th[is] crime[], that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

4

When based on oral copulation of a child 10 years old or younger, a violation of section 288.7, subdivision (b), is a general intent crime.  (*People v. Saavedra* (2018) 24 Cal.App.5th 605, 613 (*Saavedra*).)  But where, as here with count 6, the violation of section 288.7, subdivision (b), is based on sexual penetration of a child, it is a specific intent crime because it "require[s] the act of penetration 'to be done with the intent to gain sexual arousal or gratification or to inflict abuse on the victim.'  [Citations.]" (*People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167 (*ZarateCastillo*); see also *Saavedra*, *supra*, at p. 613; *People v. Ngo* (2014) 225 Cal.App.4th 126, 161.)  Accordingly, the trial court erred by labeling count 6, sexual penetration of a child, as a crime "requir[ing] general criminal intent[.]"

### 2.  The error was harmless

The error, however, was harmless beyond a reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]; *ZarateCastillo*, *supra*, 244 Cal.App.4th at pp. 1168–1169 [applying *Chapman*'s beyond-a-reasonable-doubt standard to assess prejudice from erroneous instruction that sexual penetration of a child is a general intent crime].)

"Specific and general intent have been notoriously difficult terms to define and apply[.]"  *People v. Hood* (1969) 1 Cal.3d 444, 456 (*Hood*); see also *People v. Canales* (2024) 106 Cal.App.5th 1230, 1252 [observing that specific intent and general intent "are outdated, troublesome, and generally unnecessary" terms].)  For our purposes here, "[a] crime is characterized as a 'general intent' crime when the required mental state entails only an intent to do

5

the act that causes the harm[.]" (*People v. Davis* (1995) 10 Cal.4th 463, 518, fn. 15.) "[A] crime is characterized as a 'specific intent' crime when the required mental state entails an intent to cause the resulting harm" (*ibid.*) or the "intent to do some further act or achieve some additional consequence" (*Hood*, *supra*, at p. 457).

Here, the trial court properly explained the intent required for sexual penetration of a child when it subsequently instructed the jury with CALCRIM No. 1128. The instruction explained that, to prove that Cortez was guilty of oral copulation or sexual penetration of a child 10 years old or younger, the People were required to prove that Cortez "engaged in an act of oral copulation or sexual penetration with" L.C. when L.C. "was 10 years of age or younger" and Cortez "was at least 18 years old." The instruction defined sexual penetration as "penetration, however slight, of the genital or anal opening of the other person by any foreign object, substance, instrument, device, or any unknown object *for the purpose of sexual abuse, arousal, or gratification.*" (Italics added.)

"Thus, the trial court actually instructed the jury on the specific intent required for th[at] crime[], despite failing to classify the crime[] as [a] specific intent crime[] earlier in its instructions." (*ZarateCastillo*, *supra*, 244 Cal.App.4th at p. 1168; see also *Saavedra*, *supra*, 24 Cal.App.5th at p. 615 ["CALCRIM No. 1128 correctly set out the elements—including the intent—required for the jury to convict defendant of sexual penetration of a child 10 years of age or younger"].) We disagree with Cortez that CALCRIM No. 1128 "hid the specific intent" for sexual penetration of a child.

6

Further, nothing in the record would support a finding by the jury that Cortez sexually penetrated L.C. for any purpose other than "sexual abuse, arousal, or gratification."  Thus, "[s]ince no rational jury could have found the specific intent element unproven, the error was harmless beyond a reasonable doubt.  [Citations.]"  (*Saavedra*, *supra*, 24 Cal.App.5th at p. 616; see also *ZarateCastillo*, *supra*, 244 Cal.App.4th at p. 1169 [where there was no "basis for believing that the jury could have, under any circumstances, rationally found that defendant penetrated the victim's vagina for any purpose *other* than sexual abuse, arousal, or gratification," the error in labeling the crime as one of general intent was harmless beyond a reasonable doubt].)

## B.  *CALCRIM No. 1193*

Cortez next contends that the trial court erred by instructing the jury with CALCRIM No. 1193 regarding CSAAS.

### 1.  Additional background

The trial court instructed the jury with CALCRIM No. 1193, as follows:

"You have heard testimony from Dr. Jayme Jones regarding [CSAAS].

"[CSAAS] relates to a pattern of behavior that may be present in child sexual abuse cases.  Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse.

"Dr. Jones's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged.

"You may consider this evidence only in deciding whether or not [L.C.]'s, [A.F.]'s, [Z.V.]'s, and [A.C.]'s conduct was

7

consistent with the conduct of someone who has been molested, and in evaluating the believability of their individual testimony."

Cortez did not object to CALCRIM No. 1193 as given.

## 2. The trial court did not err

Cortez contends that CALCRIM No. 1193 improperly reduced the prosecution's burden of proof. Specifically, Cortez argues that the instruction allowed the jury to consider the CSAAS evidence to evaluate witness credibility and to determine Cortez's guilt, without specifying that "the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true." (*People v. Housley* (1992) 6 Cal.App.4th 947, 959 (*Housley*).) Cortez also argues that CALCRIM No. 1193 erroneously instructed that the jury could find that the witnesses' behavior *was consistent with* the behavior of an abuse victim rather than "*not inconsistent with* having been molested[.]" (*Housley*, *supra*, at p. 959, italics added.) To forestall his ineffective assistance of counsel claim, we consider the merits of these arguments despite Cortez's failure to object in the trial court. (See *People v. Welch* (1999) 20 Cal.4th 701, 759–760).

"Multiple courts have held that CALCRIM No. 1193 accurately informs the jury on the limited use of child psychology evidence and does not: '(a) improperly allow an alleged minor victim of sexual abuse to corroborate her own testimony; (b) violate due process; or (c) misapply the burden of proof.' [Citations.]" (*People v. Melgoza* (2025) 115 Cal.App.5th 632, 656; see also *People v. Page* (2025) 114 Cal.App.5th 1022, 1029–1030 (*Page*); *People v. Ramirez* (2023) 98 Cal.App.5th 175, 219–220; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 175–176; *People v. Munch* (2020) 52 Cal.App.5th 464, 473–474; *People v. Gonzales*

8

(2017) 16 Cal.App.5th 494, 503–504.)  We agree with the holdings of these cases and reject Cortez's contrary position.

We also reject Cortez's claim that the current version of CALCRIM No. 1193 is flawed because it allows the jury to consider CSAAS evidence in deciding whether the witnesses' conduct *was consistent with* the conduct of someone who has been molested.  "The appellate courts that initially approved use of CSAAS testimony held that it 'is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are *not inconsistent with having been molested*' [citation] and that the jury must be instructed on this limitation [citation]. CALCRIM No. 1193 used the 'not inconsistent with' phrasing until it was amended in 2022 in response to unpublished opinions that considered challenges to the instruction as 'potentially misleading' because it used the quoted phrase and did not otherwise state the permissible use of CSAAS testimony. [Citation.]  The double negative was removed and replaced with the 'consistent with' phrasing that is in the current version . . . . [Citations.]"  (*Page, supra,* 114 Cal.App.5th at pp. 1030–1031.)

We find no "reasonable likelihood" that CALCRIM No. 1193 as given here "caused the jury to misapply the law in violation of the Constitution."  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) The instruction clearly stated that the CSAAS evidence was "offered *only* to explain certain behavior of an alleged victim of child sexual abuse" and that it was "*not* evidence that [Cortez] committed any of the crimes charged against him . . . ."  (Italics added.)  There was no instructional error.  (See *Page, supra,* 114 Cal.App.5th at p. 1029 [current version of CALCRIM No. 1193 "correctly instructed the jury on how it could and could not use [CSAAS expert] testimony"].)

9

## II.  Asserted Prosecutorial Misconduct and Ineffective Assistance of Counsel

Cortez contends that the prosecutor committed misconduct during rebuttal closing argument and that his trial counsel provided ineffective assistance of counsel by failing to object.

### A.  Additional background

During rebuttal closing argument, the prosecutor stated:

"Now, the defense wants you to look at the evidence not as a whole, but in a vacuum.  The evidence are pieces of a puzzle that you, the jury, get to put together.

"And if you take each puzzle [sic] independently of each other, sure, you may have a different opinion or result.  But if you put it all together, there is only one picture that it paints.

"And I am going to give you an analogy of this.

"Now, behind this white rectangle there is an animal, and I am going to give you clues to what this animal is.

"It is gray, it has four legs.  It can be found in Africa or in Asia.

"Now, at this point you probably have narrowed it down to a couple of animals, or several animals.

"This animal typically travels in a herd or a pack.  It has a very long nose.  And sometimes cartoons portray it as liking peanuts.

"So by now you have taken all the pieces and you have put it together, and I am sure you have come up with an elephant.

"But if you had each individual piece by itself, you could have come up with a lot of different answers.  It's not until you have all of it together that you can see what the actual picture is.

"And that is what this case is.

"This case is the evidence that has been presented.  This case are the witnesses that have testified."

The defense did not object to this portion of the prosecutor's argument.

## B.  Relevant law and standard of review

"A prosecutor's conduct violates the federal Constitution only when it is ' " 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.]  A prosecutor's conduct that does not rise to the level of a constitutional violation will constitute misconduct under state law only if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' [Citation.]  A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence.  [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 726 (*Ledesma*).)

Although "[a]dvocates are given significant leeway in discussing the legal and factual merits of a case during argument" (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*)), " 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.]" (*Ibid.*)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury

11

drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citation.]" (*Centeno, supra*, 60 Cal.4th at p. 667.)

" 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion— and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' [Citation.]" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 306.) We review de novo a claim of prosecutorial misconduct. (See *People v. Uribe* (2011) 199 Cal.App.4th 836, 860.)

To establish ineffective assistance of counsel, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness under prevailing professional norms" and resulting prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.]" (*Ledesma, supra*, 39 Cal.4th at p. 746.)

### C. Analysis

Cortez forfeited his claim of prosecutorial misconduct by failing to raise it in the trial court. (*People v. Winbush* (2017) 2 Cal.5th 402, 481.)

12

The claim also fails on the merits. The prosecutor's puzzle analogy did not, as Cortez argues, mislead the jury about the reasonable doubt burden of proof. The challenged statements did not mention the reasonable doubt standard, let alone attempt to define or explain it. The prosecutor simply urged the jury to view pieces of evidence as a whole rather than in isolation. This type of argument falls well within the "significant leeway" given to prosecutors "in discussing the legal and factual merits of a case." (*Centeno*, *supra*, 60 Cal.4th at p. 666.) It is also readily distinguishable from the misconduct at issue in *Centeno*, *supra*, at pages 665–666, *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1264–1265, and *People v. Nguyen* (1995) 40 Cal.App.4th 28, 35, which expressly commented on the reasonable doubt standard. And, in light of the trial court's unambiguous instructions on reasonable doubt (CALCRIM Nos. 220, 221), "there was no reasonable likelihood that the jury erroneously construed the prosecution's burden of proof." (*People v. Samayoa* (1997) 15 Cal.4th 795, 842.)

Because there was nothing objectionable about the prosecutor's statements with respect to the burden of proof, we also reject Cortez's argument that his trial counsel was ineffective for failing to object. (See *People v. Stewart* (2004) 33 Cal.4th 425, 509 [rejecting claim of ineffective assistance of counsel for failing to object to alleged prosecutorial misconduct where "reasonable counsel may well have determined that an objection would be unwise, either because the challenged conduct was not improper or because an objection (and possibly an admonition as well) likely would have served to highlight matter that might be unfavorable to [the] defendant"].)

13

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**.

GOORVITCH, J.

We concur:

CHAVEZ, Acting P. J.

RICHARDSON, J.

14